**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**OPERACIONES TECNICAS MARINAS S.A.S.**

**VERSUS** **CIVIL ACTION NO.**

**DIVERSIFIED MARINE SERVICES, LLC; JOHN DOES 1-3; ABC INSURANCE CO., UNDERWRITERS OF DIVERSIFIED MARINE SERVICES, LLC; AND, XYZ INSURANCE CO., UNDERWRITERS OF JOHN DOES 1-3**

************************************************************************************

# COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Operaciones Tecnicas Marinas S.A.S. ("OTM"), and files its Complaint against Defendants Diversified Marine Services, LLC ("Diversified"); individuals John Does 1, 2 and 3, ABC Insurance Co., Underwriters for Diversified Marine Services, LLC; and, XYZ Insurance Co., Underwriters for John Does 1-3, all to be nominated once identified later in this suit. For and in support of its causes of actions based on negligence, fraud, gross negligence, intentional and negligent misrepresentation, negligent and intentional breach of contract and breach of the warranty of workmanlike performance in connection with the assurances of repairs contracted to be done on the vessels formerly known as the M/V MARY TIDE and M/V THOMAS TIDE, Plaintiff, OTM, avers as follows:

**Parties**

1.

Plaintiff OTM is a corporation duly organized and existing under the laws of Colombia, and the owner of the vessels formerly known as the M/V MARY TIDE and the M/V THOMAS TIDE (referred to in this pleading as the "MARY TIDE" and "THOMAS TIDE" for ease of reference).

2.

Defendant Diversified is a company organized under the laws of the State of Louisiana, with its principal place of business located at 256 Company Canal Road, Bourg, Louisiana 70343, and who may be served through its registered agent for service of process, Robert Boudreaux, 4673 Bayouside Drive, Chauvin, Louisiana 70344. Diversified contracted with OTM, to inspect, provide recommendations and perform repairs to the MARY TIDE and THOMAS TIDE in advance of these vessels transiting the Gulf of Mexico and Caribbean Sea for delivery to Cartagena, Colombia.

3.

Defendants John Doe 1-3 are individuals subject to the jurisdiction of this Honorable Court who were owners, executives, employees and/or contractors of Diversified, and who had direct or personal knowledge that a number of the critical systems aboard the MARY TIDE and THOMAS TIDE which were represented as having been inspected, repaired, rebuilt, and/or maintained, and which were invoiced to and paid in full by OTM, were in fact ***never*** repaired, rebuilt or maintained. By so doing, these individuals did knowingly endanger the lives of the crewmembers of the MARY TIDE and THOMAS TIDE when they performed acts such as representing that the critical systems (including the main engines) had been rebuilt or repaired;

invoicing repair, maintenance and inspection charges to OTM and receiving payment for same when they knew or should have known that the service was not performed; presenting acceptance certificates to OTM personnel representing that all repairs invoiced had been performed and communicating same to the delivery crew for the voyage across the Gulf of Mexico and Caribbean Sea to Cartagena, Colombia; and all of them to be served at their addresses that will be designated during the course of this litigation and in accordance with the Federal Rules of Civil Procedure and this Court's scheduling order.

4.

ABC Insurance Company is an entity believed to have provided liability insurance coverage to Diversified Marine Services, LLC and which will provide coverage for the negligent, purposeful and willful acts of the company and/or its employees, and may be subject to service under Louisiana's Direct Action Statute, and who will be nominated after its identity has been determined through discovery and in accordance with the Federal Rules of Civil Procedure and this Court's scheduling order.

5.

XYZ Insurance Companies provided homeowners and/or other liability policies which extended coverage to John Does 1-3; and may be served under Louisiana's Direct Action Statute and who will be nominated after their identity has been determined through discovery and in accordance with the Federal Rules of Civil Procedure and this Court's scheduling order.

## **Jurisdiction**

6.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, in that this action involves damages resulting from breach of

duties derived from a contract to inspect and repair vessels in navigation with the impact of said breach causing damages that occurred on the high seas.

7.

Additionally, to the extent applicable, jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1367, in that claims brought are so interrelated that they form part of the same controversy.

## Venue

8.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the events and omissions giving rise to Plaintiff's claims occurred within the judicial district of this Court in the course of performing inspection and repairs at Diversified's shipyard in Bourg, Louisiana.

## Facts

9.

OTM is a marine operating company based in Cartagena, Colombia. OTM purchased the sister vessels MARY TIDE and THOMAS TIDE. Both vessels are ninety-five foot long aluminum crewboats, typical of those that provide transportation services to offshore oil and gas facilities, and had matching dimensions and power systems. Both vessels were required by OTM to fulfill a contract for provision of crewboat services to Serviport S.A. in Cartagena, Colombia.

10.

After purchasing the MARY TIDE and THOMAS TIDE, executives with OTM contacted Diversified for the purpose of having Diversified inspect the vessels, recommend repair and maintenance items to same, and perform those actions in order to render the vessels fit to safely transit the Gulf of Mexico and Caribbean Sea for delivery to Cartagena, Colombia.

11.

Diversified's owners and employees represented to OTM that Diversified's shipyard and shipyard personnel had the expertise and ability to inspect crewboats such as the MARY TIDE and THOMAS TIDE, were familiar with the main engine propulsion systems, as well as the running gear, electrical generating systems, air conditioning systems, navigation systems, steering systems, hull structure and other components of the vessels. Likewise, Diversified's owners and employees represented that both vessels would be thoroughly inspected, that repair and service recommendations would be made and the work timely performed to industry standards once approved by OTM in order to render the vessels fit to safely transit from Houma, Louisiana to Cartagena, Colombia and to serve as offshore crewboats upon arrival.

12.

Diversified, through its owners and employees, also represented the company had the ability and expertise to perform a number of desired preventive maintenance items for both vessels, such as preparing and painting the exterior aluminum hull surfaces.

13.

In November 2010, OTM entered into a contract with Diversified to drydock the THOMAS TIDE and MARY TIDE, evaluate the condition of the vessels and determine the scope of work necessary to make the vessels seaworthy. See invoice 1058 attached as Exhibit 1.

14.

Commencing in November 2010 and continuing through June 2011, Diversified's owners and employees regularly communicated with OTM's representatives to make recommendations based on their inspections of the vessels, to obtain approval for maintenance and repair items to the vessels and to invoice and collect funds from OTM for delineated and specific items of work.

15.

Diversified identified the following repairs to be made to the MARY TIDE and agreed to perform same:

| Repair Item |
|---|
| Crop and replace aluminum as needed to ensure watertight integrity of hull |
| Install radar |
| Repair/replace air conditioning and heat and install all necessary duct work |
| Replace generator fuel piping |
| Replace fresh water pump and repair leaks in fresh water system |
| Replace engine room blowers |
| Repair and replace interior lights and navigation lights |
| Install 6 man life raft |
| Replace air compressors and electric motor |
| Repair main engine air system |
| Replace and repair search lights |
| Repair hydraulic steering pump |
| Overhaul center main engine |
| Overhaul starboard main engine |
| Replace fuel pump on starboard generator |
| Repair and replace exhaust system |
| Repair/replace hydraulic steering system |
| Repair/replace all engine start/stop boxes |
| De-gas and clean fuel tanks; clean and replace fuel |
| Remove tires; Sand and re-paint exterior hull and bulwarks |
| Remove and replace propellers; Draw shafts; Replace cutlass bearings |
| Install zincs |
| Clean bilges |
| Repair/replace pneumatic throttle controls and air system |

16.

Diversified identified the following repairs to be made to the THOMAS TIDE and agreed to perform same:

| Repair Item |
| --- |
| Install radar |
| Repair/replace air conditioning and heat and install all necessary duct work |
| Replace fire pump and starter box |
| Fire hose with nozzle |
| Install 6 man life raft |
| Install search lights |
| Repair bilge manifold and piping |
| Install fresh water pump |
| Install main electrical breakers in panel |
| Install deck hatches |
| De-gas and clean fuel tanks; clean and replace fuel |
| Remove tires; Sand and re-paint exterior hull and bulwarks |
| Remove and replace propellers; Draw shafts; Replace cutlass bearings |
| Install zincs |
| Clean bilges |
| Rebuild center main engine |
| Repair and replace exhaust system |
| Repair/replace pneumatic throttle controls and air system |

17.

Relying on the representations of Diversified, its owners and employees, OTM approved a schedule of work which was later represented in detailed invoices from Diversified. Over the course of this same time period, OTM paid and satisfied all charges requested from Diversified, its owners and employees. Invoices evidencing the repairs to the MARY TIDE are attached as Exhibit 2. Invoices evidencing the repairs to the THOMAS TIDE are attached as Exhibit 3.

18.

On May 17, 2011, based on Diversified's assurances that the vessels were nearly ready for service, OTM entered into a bareboat charter agreement with Serviport S.A. Pursuant to the terms on the charter agreement, OTM was to deliver the vessels to Serviport on July 15, 2011.

The charter agreement provided for a six-month term, with an option to extend the charter for another six months. The initial six month charter hire was $381,600.00 USD. OTM informed Diversified of the charter commencement date and Diversified assured OTM that the vessels would be fit for the transit to Colombia in sufficient time to commence the charter. A certified translation of the OTM-Serviport bareboat charter agreement is attached as Exhibit 4.

19.

In June 2011, Diversified's owners and employees represented to OTM that the vessels were complete, ready for transit from Houma, Louisiana to Cartagena, Colombia and in connection with same, informed OTM that it should bring crewmembers to Diversified's yard for the transit to Cartagena, Colombia.

20.

On or about June 20, 2011, OTM paid Diversified the outstanding balance due for the repairs supposedly performed to the MARY TIDE and THOMAS TIDE, and began making preparations for the transit to Cartagena, Colombia. OTM paid Diversified a total of $344,769.15 USD for the repairs purportedly performed to the vessels. OTM's reliance on Diversified's representations and warranties as to the readiness of the MARY TIDE and THOMAS TIDE for transit in the Gulf of Mexico and Caribbean Sea was further supported by the specific repair items noted as performed in the invoices. Invoices for the repairs to the MARY TIDE and THOMAS TIDE are attached as Exhibits 2 and 3 respectively.

21.

When OTM's representatives arrived at Diversified's yard, they were informed by Diversified's owners and employees that all the inspection, repair and maintenance work which had been charged in Diversified's invoices had been completely and totally performed; and prior

to allowing OTM's crewmembers to board the vessels, OTM was to sign an inspection statement acknowledging that they had been informed of the total and full completion of all the work which had been invoiced by Diversified.

22.

In connection with presenting the inspection statement and invoices presented to OTM for payment, and because of the representations made by Diversified as to their expertise and abilities how to operate as a shipyard, OTM reasonably relied upon Diversified, its owners and employees in its belief that the schedule of repair and maintenance items for which OTM had been charged had in fact been performed, and that between November 2010 and June 2011 Diversified had made reasonable and customary inspection of the operating systems and hull integrity of the MARY TIDE and THOMAS TIDE, and that it was reasonably safe to allow crewmembers to deliver both vessels to Cartagena, Colombia. In connection with this reasonable reliance upon the representations of Diversified, OTM was provided the following non-exclusive list of actions, statements, representations and warranties by Diversified:

a. The main engines of MARY TIDE and THOMAS TIDE had been inspected;

b. That the center and starboard main engines of the MARY TIDE had undergone full out of frame overhauls; meaning that they had been unbolted and removed completely from the vessels, broken down to the individual component pieces, cleaned and that all mechanical systems and wear items on the vessel had been replaced with new parts with the engines then being returned to the vessel;

c. That the center main engine of the THOMAS TIDE had undergone an in frame overhaul; meaning that the major wear items of the engine had been replaced with the engine still mounted into the frame of the vessel;

d. That the gears transmitting the power between the main engine to the shaft of the MARY TIDE and THOMAS TIDE had been inspected, and repaired as necessary;

e. That the rudder stocks and steering systems of the MARY TIDE and THOMAS TIDE had been inspected and repaired;

f. That the hull integrity of both vessels had been inspected for water leakage and possible compromised areas and that repair for laying the same had been recommended and performed;

g. That the necessary navigational equipment on both vessels such as radar, GPS, VHF radio had been inspected, tested and installed new or repaired as needed;

h. That the air conditioning systems had been inspected and repaired or replaced as new, as reflected in their invoices or that various systems for the vessel had been inspected or repaired or cleaned as necessary including fire pumps, fuel tanks, bilges and corrosion protection elements such as sacrificial zincs or that the exterior hull of the vessels had been inspected in connection with the preparation for and painting of the vessels.

In light of the foregoing activities as performed by Diversified, its owners and employees, OTM had a reasonable expectation that Diversified knew or should have known that these vessels were intended to transit the Gulf of Mexico and Caribbean Sea, and that OTM expected the vessels to be ready for such a voyage. OTM also knew the vessels were under separate contractual obligations upon arrival in Colombia.

23.

Between June 21 and 22, 2011, the crews cleaned the boats and brought various equipment and systems "on-line" in order to ready the vessels for the delivery voyage. The

delivery crews also loaded the vessels with fuel, water and supplies for the voyage. See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

24.

On June 23, 2011, both vessels departed Diversified's shipyard for the more than 1400 nautical mile delivery voyage to Cartagena, Colombia. See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

25.

Between June 23 and July 1, 2011, the following systems aboard the THOMAS TIDE failed and the crew discovered the following discrepancies with the repairs Diversified supposedly performed to the vessel:

a. The general alarm and whistle were inoperable;

b. A hole was discovered in the starboard stern of the vessel;

c. Exhaust leaks in the vessel's generators;

d. The center main engine developed a water leak in the cooling system and had to be secured;

e. Port main engine shutdown and the air compressors could not create enough air pressure in the vessel's pneumatic system to restart the engine. The crew discovered that many of the engine control valves were leaking and were not rebuilt;

f. The Automated Identification System, radar, VHF radio and GPS navigation systems failed;

g. The crew experienced electrocution at various points in the vessel, presumably from one or more electrical shorts;

h. Air conditioning systems failed;

i. Electric hydraulic pump in steering system failed; and,

j. Both generators failed and could not be restarted.

See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

26.

Between June 23 and July 1, 2011, the following systems aboard the MARY TIDE failed and the crew discovered the following discrepancies with the repairs Diversified supposedly performed to the vessel:

a. The pneumatic air clutch and throttle control for the center main engine failed;

b. The vessel was taking on water and the bilge had to be pumped every four to five hours to remain afloat;

c. The exhaust systems for the center and starboard main engines began leaking exhaust gases into the engine room rendering the area hazardous;

d. The vessel's bilge pump system failed and the crew had to use a portable sump pump to keep the bilges dry;

e. The starboard main engine over-sped and could not be shutdown by the remote stop located in the wheelhouse. The crew shut-off the engine's fuel supply to prevent a catastrophic failure and discovered a screw was missing from the governor;

f. All engine gauges in the wheelhouse failed and several electrical shorts were discovered

g. The port generator failed;

h. A valve in the vessel's seachest, a through-hull fitting that provides cooling water to the main engines, failed;

i. The port side engine room blower failed and the crew discovered it was improperly wired;

j. The throttle linkage on the port generator failed;

k. The engine alarms failed;

l. The port main engine failed and it was discovered that saltwater was leaking into the engines exhaust system;

m. The clutch on the center main engine began slipping and the engine ultimately had to be secured to prevent further damage or fire; and,

n. The turbo on the starboard main engine failed, the engine room filled with exhaust smoke and the engine had to be secured.

See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

27.

On June 26, 2011, the steering system aboard the THOMAS TIDE failed and the vessel was taken under tow by the MARY TIDE. See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

28.

On July 1, 2011, the starboard main engine on the MARY TIDE shutdown and the vessel was left with only the center main engine which had no remote throttle or clutch control, or rudder. With both vessels having experienced catastrophic electrical, hydraulic, pneumatic and other mechanical failures and now adrift about 340 nautical miles from Cartagena, Colombia, the captain of the MARY TIDE called for assistance. See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

29.

After both vessels suffered a series of catastrophic engine and other mechanical failures and were set adrift, the crew of the MARY TIDE and THOMAS TIDE were placed in direct peril and exposed to risk of death due to the negligence, grossly negligent, intentional, fraudulent and reckless conduct of Diversified, its employees, owners and/or contractors. Specifically, the conduct of Diversified and its employees, owners and contractors were the direct and proximate cause of these vessels losing propulsion, becoming vulnerable to the sea, and in need of rescue, the culmination of these factors thereby producing a situation in which the lives of the delivery crew could have been lost had a successful rescue not been accomplished first by the Colombian Navy and then later by a commercial assist tug hired by OTM. Diversified knew the vessels would sail to Colombia, yet the negligence, gross negligence and bad faith in making the repairs exposed the crew to foreseeable injury and loss of life.

30.

On or about July 1, 2011, OTM sent notice to Diversified that the vessels were in critical condition and that a joint survey would take place once the vessels arrived in Cartagena, Colombia, and OTM would provide Diversified five days notice of same.

31.

On the evening of July 2, 2011, the MARY TIDE and THOMAS TIDE were taken under tow by a Colombian military vessel. On July 4, 2011, the vessels were transferred into the tow of a commercial assist tug that had been hired by OTM. See Logs of MARY TIDE and THOMAS TIDE attached as Exhibits 5 and 6 respectively.

32.

On July 7, 2011, the THOMAS TIDE and MARY TIDE arrived in Cartagena, Colombia. OTM provided Diversified with frequent requests for joint inspection, and Diversified then appointed a surveyor in Colombia who then attended multiple joint surveys of both the MARY TIDE and THOMAS TIDE. On July 21, September 24 and October 21, 2011, the vessels were surveyed and numerous electrical and mechanical problems were discovered throughout the vessels. See Lloyd's Register Condition Survey attached as Exhibit 7.

33.

On October 30, 2011, the main engines of the MARY TIDE and THOMAS TIDE were disassembled and inspected by Stewart & Stevenson, an international diesel engine repair company. The inspection revealed that the center main engine of the THOMAS TIDE and starboard main engine of the MARY TIDE had not been overhauled by Diversified as agreed. The inspection also revealed that the center main engine of the MARY TIDE had not been properly reassembled after the overhaul and required additional repairs. See certified translation of Stewart & Stevenson Technical Report dated October 30, 2011 attached as Exhibit 10.

34.

As a result of Diversified's failure to correctly repair/replace the electrical, hydraulic, pneumatic and other mechanical systems aboard the MARY TIDE and THOMAS TIDE, the vessels were not available for delivery to Serviport on July 15, 2011 as required by the OTM-Serviport charter party, placing OTM in breach of the agreement that was ultimately terminated. A certified translation of the OTM-Serviport bareboat charter agreement is attached as Exhibit 4; certified translations of correspondence between Serviport and OTM dated May 10 and May 12, 2011 are attached as Exhibits 8 and 9 respectively. Diversified was aware of such contractual

obligations by OTM during the repairs and all times material, such that consequential damages may be recovered.

35.

Since arriving in Colombia, the electrical, hydraulic, pneumatic and other mechanical systems aboard the MARY TIDE and THOMAS TIDE have undergone repairs, including repairs that were supposed to have been performed by Diversified and/or were negligently performed by Diversified, and for which Diversified had been paid. The center main engine of the THOMAS TIDE and starboard main engine of the MARY TIDE had to be rebuilt as Diversified had not rebuilt the engines despite having agreed and been paid to do so. To date, repair costs are in excess of $350,000.00 USD. See spreadsheet and accounting of repairs performed to the THOMAS TIDE and MARY TIDE attached as Exhibit 11.

36.

Diversified, its employees, owners and/or contractors negligently, intentionally, recklessly, and fraudulently misrepresented the condition of the MARY TIDE and the THOMAS TIDE as being refurbished in accordance with the invoices it submitted to OTM when OTM attempted to transit the vessels to.

37.

OTM justifiably relied on the representations of Diversified as to the condition of the MARY TIDE and the THOMAS TIDE when it attempted the transit of the vessels on or about June 20, 2011; OTM further relied on Diversified's representations when the vessels commenced the voyage from Houma, Louisiana to Cartagena, Colombia.

38.

Diversified, its employees, owners and/or contractors knew or should have known that the work Diversified performed, or contracted to a third party to perform, to the MARY TIDE and THOMAS TIDE had not been completed or was incorrectly completed when OTM commenced the voyage to Colombia.

39.

Diversified intentionally misrepresented the condition of MARY TIDE and the THOMAS TIDE to induce OTM into paying for the repairs purportedly made to the vessels for the transit to Colombia, and warranted the vessels as fit for service before departing for Colombia.

## CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

40.

Plaintiff restates and realleges Paragraph Nos. 1-39 as if set forth fully herein.

41.

OTM and Diversified entered into a contract whereby OTM agreed to conduct a thorough inspection of both vessels' steering systems, main engine propulsion systems, gear systems, electrical systems, navigation systems, fuel systems, air conditioning systems, the hull integrity of both vessels and other components of the MARY TIDE and THOMAS TIDE, and were to perform repairs to the vessels as needed to render the vessels fit for the intended transit from Houma, Louisiana to Cartagena, Colombia.

42.

Diversified was aware both vessels had contractual obligations upon arrival in Colombia and that the repairs and other obligations must be completed in a timely manner such that OTM could not meet those obligations.

43.

After numerous systems and components aboard each vessel failed during the transit to Colombia, leaving the vessels adrift and their crews helplessly exposed to the perils of the sea, the vessels were towed to port and the vessels' systems and machinery were inspected. Upon inspection, it was evident that Diversified did not perform the necessary inspections and repairs as it had agreed.

COUNT II - NEGLIGENT MISREPRESENTATION

44.

Plaintiff restates and realleges Paragraph Nos. 1-43 as if set forth fully herein.

45.

Diversifed, in the course of its business to inspect and repair the MARY TIDE and THOMAS TIDE, supplied false information to OTM regarding the inspection and repair efforts being made to the vessels.

46.

As a direct and proximate result of Diversified's breach of contract, OTM suffered damages including, but not limited to, towing expenses, surveying and inspection expenses, performing repairs that Diversified had agreed and been paid to perform but did not, performing repairs that Diversified had agreed and been paid to perform but were negligently performed, and

lost charter hire that would have been earned from the OTM-Serviport Charter Party, and other foreseeable damages.

47.

Diversified failed to exercise reasonable care in gathering the information concerning the inspection and repairs being made to the MARY TIDE and THOMAS TIDE.

48.

OTM justifiably relied on the false information provided by Diversified when OTM attempted the transit to Cartagena, Colombia for further delivery and performance of contractual obligations there.

49.

As a direct and proximate result of OTM's justifiable reliance on Diversified's representations that the MARY TIDE and THOMAS TIDE had been inspected and repaired to undertake the voyage to Cartagena, Colombia, OTM suffered damages including, but not limited to, towing expenses, surveying and inspection expenses, performing repairs that Diversified had agreed and been paid to perform but did not, performing repairs that Diversified had agreed and been paid to perform but were negligently performed, and lost charter hire that would have been earned from the OTM-Serviport Charter Party, and other foreseeable damages.

## COUNT III - INTENTIONAL MISREPRESENTATION

50.

Plaintiff restates and realleges Paragraph Nos. 1-49 as if set forth fully herein.

51.

Diversified misrepresented that necessary repairs were performed to the MARY TIDE and THOMAS TIDE, yet Diversified submitted invoices and received payments for the repairs purportedly made to the vessels.

52.

Diversified's misrepresentation was made with the intent to deceive OTM into paying for inspections and repairs that were not in fact performed.

53.

OTM justifiably relied on Diversified's misrepresentation that inspections and necessary repairs were performed to the MARY TIDE and THOMAS TIDE so that the vessels would be fit for the voyage from Houma, Louisiana to Cartagena, Colombia.

54.

As a result of Diversified's intentional misrepresentation that the necessary inspections and repairs were performed to the MARY TIDE and THOMAS TIDE, OTM suffered damages including, but not limited to, towing expenses, surveying and inspection expenses, performing repairs that Diversified had agreed and been paid to perform but did not, performing repairs that Diversified had agreed and been paid to perform but were negligently performed, and lost charter hire that would have been earned from the OTM-Serviport Charter Party, and other foreseeable damages.

COUNT IV - NEGLIGENCE, GROSS NEGLIGENCE AND RECKLESSNESS

55.

Plaintiff restates and realleges Paragraph Nos. 1-54 as if set forth fully herein.

56.

Diversified had a duty to properly identify the necessary repairs to be made to the MARY TIDE and THOMAS TIDE to render the vessels fit and seaworthy for the intended voyage from Houma, Louisiana to Cartagena, Colombia in accordance with industry standards.

57.

Diversified negligently and intentionally breached its duty of care owed to OTM.

58.

Diversified's negligent and intentional breach of its duty of care was the direct and proximate cause of the catastrophic failure that left the MARY TIDE and THOMAS TIDE adrift and the vessel crews exposed to the perils of the sea.

59.

As a result of Diversified's negligent and intentional breach of its duty of care, OTM suffered damages including, but not limited to, towing expenses, surveying and inspection expenses, performing repairs that Diversified had agreed and been paid to perform but did not, performing repairs that Diversified had agreed and been paid to perform but were negligently performed, and lost charter hire that would have been earned from the OTM-Serviport Charter Party, and other foreseeable and punitive damages.

## COUNT V - WARRANTY OF WORKMANLIKE PERFORMANCE

60.

Plaintiff restates and realleges Paragraph Nos. 1-59 as if set forth fully herein.

61.

As a ship repairer, Diversified had a duty to perform its services with reasonable care, skill, diligence and in a good workmanlike manner.

62.

Inspections of the MARY TIDE and THOMAS TIDE upon arrival in Cartagena revealed that Diversified did not perform repairs with reasonable care, skill, diligence and in a good workmanlike manner, though Diversified invoiced OTM for and was paid for the repairs.

63.

Diversified's failure to inspect and repair the vessels is illustrated by the catastrophic engine and mechanical failures shortly after OTM took delivery and the subsequent inspections of the vessels.

64.

As a result of Diversified's breach of its warranty of workmanlike performance, OTM suffered damages including, but not limited to, towing expenses, surveying and inspection expenses, performing repairs that Diversified had agreed and been paid to perform but did not, performing repairs that Diversified had agreed and been paid to perform but were negligently performed, and lost charter hire that would have been earned from the OTM-Serviport Charter Party, and other foreseeable damages including, but not limited to, consequential damages and exposing the crew to possible personal injury and death.

COUNT VI - FRAUD

65.

Plaintiff restates and realleges Paragraph Nos. 1-64 as if set forth fully herein.

66.

OTM specifically re-alleges the facts plead in Paragraph Nos. 10 through 16 - Diversified represented it had the experience and ability to inspect the MARY TIDE and THOMAS TIDE and identify necessary repairs and to render the vessels seaworthy and fit for the intended voyage

from Houma, Louisiana to Cartagena, Colombia and to work as typical offshore crewboats in support of oilfield services upon arrival; Diversified identified necessary repairs to prepare the vessels for the voyage and to work as typical offshore crewboats;

67.

Further, OTM specifically re-alleges the facts plead in Paragraph Nos. 17 through 19 - based on Diversified's representations, OTM approved a schedule of work to render the vessels fit for the intended voyage and to work as typical offshore crewboats; Diversified represented that it performed the repair work according to the approved schedule and invoiced OTM for same.

68.

Further, OTM specifically re-alleges the facts plead in Paragraph Nos. 20 through 22 - when OTM executives were advised the repair work had been fully performed, OTM representatives began preparing the vessels for departure to Colombia and were assured by Diversified representatives that the repair work had been completely and totally performed; based on Diversified's representations that the repairs were performed, OTM's crewed the vessels for transit to Colombia and began making preparations for the transit.

69.

Further, OTM specifically re-alleges the facts plead in Paragraph Nos. 24 through 35 - during the delivery voyage, both vessels experienced catastrophic mechanical failures of the electrical systems, propulsion systems, steering systems, air conditioning systems, navigation systems and hull integrity; as a result of these failures, both vessels were left adrift in the Caribbean Sea and had to be towed into port; upon arrival in Cartagena, Colombia, subsequent

inspections of the vessels revealed that the repairs Diversified identified, agreed to perform and had been paid for were incorrectly performed and/or were not performed.

70.

Diversified's representations that it had the experience and ability to inspect the MARY TIDE and THOMAS TIDE and identify necessary repairs to render the vessels seaworthy and fit for the delivery voyage to Cartagena, Colombia to work as typical offshore crewboats in support of oilfield services upon arrival, and that those necessary repairs were made were false.

71.

Diversified's representations were known to be false when made or were made recklessly without knowledge as to its truth and as a positive assertion.

72.

Diversified's representations that the vessels were repaired were made with the intention that OTM pay for the repairs purportedly made to the vessels and for OTM to undertake the voyage to Colombia.

73.

OTM paid Diversified for the repairs purportedly made to the vessels and undertook to deliver the vessels in Colombia.

74.

As a direct and proximate result of Diversified's fraudulent acts and misrepresentations, OTM suffered damages including, but not limited to, towing expenses, surveying and inspection expenses, performing repairs that Diversified had agreed and been paid to perform but did not, performing repairs that Diversified had agreed and been paid to perform but were negligently

performed, and lost charter hire that would have been earned from the OTM-Serviport Charter Party, and other foreseeable and consequential damages.

75.

In addition to the expenses OTM incurred as a result of the repair work Diversified negligently performed or misrepresented that it did perform to the THOMAS TIDE and MARY TIDE, Diversified endangered the lives of the vessels' delivery crews who were exposed to sinking, electrocution, inhalation of exhaust gases, collision and fire.

COUNT VII - PUNITIVE DAMAGES

76.

Plaintiff restates and realleges Paragraph Nos. 1-75 as if set forth fully herein.

77.

The actions of Diversified, its employees, owners and contractors were not simply negligent, but were done with a callous and intentional disregard for the safety of human life and were the type of action which could reasonably and forseeably result in a loss of human life and which in fact proximately caused and created circumstances which led to the threat of serious injury and/or loss of life of crewmembers of the MARY TIDE and THOMAS TIDE through the loss of electric and motive power of these vessels as they transited the Gulf of Mexico and Caribbean Sea.

WHEREFORE, after due proceedings are held, Plaintiff, Operaciones Tecnicas Marinas S.A.S. prays that judgment be granted against Defendant Diversified Marine Services, LLC affording to OTM all amounts owed and damages that result from Defendants' breaches including, but not limited to, the following:

a. Reimbursement of towing expenses;

b. Reimbursement of survey and inspection expenses upon arrival in Cartagena, Colombia;

c. Refund of monies paid to Diversified for repairs that were charged but never performed;

d. Refund of monies paid to Diversified for repairs that were negligently performed;

e. Lost charter hire that would have been earned from the OTM-Serviport charter party;

f. Additional repair costs, costs associated with salvage and other foreseeable damages;

g. Attorney's fees;

h. Costs of litigation;

i. Pre- and post-judgment interest;

j. Consequential damages;

k. Damages for breach of contract, bad faith breach of contract and for breach of the warranty of workmanlike performance;

l. Punitive damages to account for the potential loss of human life; and,

m. All other relief appropriate at law, admiralty or in equity.

Respectfully submitted, this 31st day of July, 2012.

OPERACIONES TECNICAS MARINAS S.A.S.

BY: FOWLER, RODRIGUEZ VALDES-FAULI

*_/s/ Michael J. Thompson, Jr._*
John A. Scialdone (LA Bar No. 21859)
Todd G. Crawford (LA Bar No. 20150)
Michael J. Thompson, Jr. (LA Bar No. 33412)
John S. Garner (LA Bar No. 25314)
FOWLER RODRIGUEZ VALDES-FAULI
2505 14th Street, Suite 500
Gulfport, MS 39501
Telephone: (228) 822-9340
Facsimile: (228) 822-9343

mthompson@frvf-law.com
*Attorneys for Operaciones Tecnicas Marinas S.A.S.*