UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

OPERACIONES TECNICAS MARINAS S.A.S.          CIVIL ACTION

v.                                                              NO. 12-1979

DIVERSIFIED MARINE SERVICES, LLC ET AL.          SECTION F

ORDER AND REASONS

Before the Court is Diversified Marine Services, LLC's
motion to dismiss plaintiff's claims for gross negligence,
recklessness, fraud, and punitive damages.  For the reasons that
follow, the motion is GRANTED with respect to plaintiff's fraud
claim, and DENIED with respect to plaintiff's claims for gross
negligence, recklessness, and punitive damages.

Background

This case arises from a failed maritime voyage.

Operaciones Tenicas Marinas ("OTM") is a marine operating
company based in Cartagena, Colombia.  OTM purchased two sister
vessels, M/V MARY TIDE and M/V THOMAS TIDE, which had been out of
service for several years.  In November 2010, OTM entered into a
contract with Diversified Marine Services, LCC, to drydock the
vessels, evaluate their condition, and determine the work
necessary to make the vessels seaworthy.

From November 2010 to June 2011, Diversified allegedly
communicated on a regular basis with OTM to relay recommendations

1

based on its inspection of the vessels, obtain approval for maintenance and repair, and invoice and collect funds from OTM for work performed.[1]  According to the plaintiff's complaint, OTM relied on the representations of Diversified and approved a schedule of work, which Diversified supposedly performed and told OTM it had performed.  OTM paid and satisfied all invoices, and on May 17, 2011, based on Diversified's assurances that the vessels were nearly ready for use, OTM entered into a bareboat charter agreement with Serviport S.A.[2]  According to the terms of the charter agreement, OTM was to deliver the vessels to Serviport on July 15, 2011.  OTM contends it informed Diversified of the charter agreement and Diversified told OTM that the vessels would be fit for the voyage to Colombia in sufficient time to commence the charter.

On or about June 20, 2011, OTM paid Diversified the outstanding balance for the vessel repairs.  In total, OTM paid $344,769.15 in repairs purportedly performed to both vessels. OTM asserts that it relied upon the representations of Diversified that the following repairs had been made:

(1) the main engines of both vessels had been inspected;

_____

[1] Diversified allegedly identified twenty-four repairs to be made to the M/V MARY TIDE, and eighteen repairs for M/V THOMAS TIDE.

[2] The charter agreement provided for a six-month term, with an option to extend the charter for another six months.  The initial six month charter hire was $381,600.

(2) the center and starboard main engines of the M/V MARY TIDE had undergone full out-of-frame overhauls;[3]

(3) the center main engine of the M/V THOMAS TIDE had undergone an in-frame overhaul;[4]

(4) the gears transmitting the power between the main engine to the shaft of both vessels has been inspected and repaired;

(5) the rudder stocks and steering systems of both vessels has been inspected and repaired;

(6) the hull integrity of both vessels has been inspected for water leakage and possible compromised areas, and repair for laying the same had been recommended and performed;

(7) the necessary navigational equipment on both vessels had been inspected, tested, and repaired or replaced accordingly;

(8) the air-conditioning systems, along with other various systems, had been inspected and repaired as new.

On June 23, 2011, both vessels departed the Diversified shipyard for Cartagena, Colombia.  The vessels soon experienced

---

[3] This requires unbolting and completely removing the engines from the vessel.  Once removed, the engines are broken down to individual component pieces and cleaned.  All mechanical systems and wear items are then replaced with new parts, and the engines are then returned to the vessel.

[4] This involves replacing the major wear items of the engine while the engine remains mounted to the frame of the vessel.

severe mechanical and electrical problems, and became adrift approximately 340 miles from Cartagena, Colombia.  As a result, both vessels had to be towed the last leg of the voyage, first by the Colombian Navy and later by a commercial assist tug hired by OTM.

The vessels were surveyed upon arrival, and, OTM contends, several electrical and mechanical problems were discovered.  OTM also claims that the engines for both vessels were disassembled for inspection by an engine repair company, Stewart & Stevenson. The results of the inspection concluded that the center main engine of M/V THOMAS TIDE and the starboard main engine of M/V MARY TIDE had not been overhauled as Diversified agreed.  Because the vessels would be unavailable for delivery to Serviport on July 15, 2011, OTM was in breach of the OTM-Serviport bareboat charter agreement, which was ultimately terminated.

OTM sued Diversified in this Court on July 31, 2012, alleging claims for breach of contract; negligent misrepresentation; intentional misrepresentation; negligence, gross negligence, and recklessness; breach of warranty of workmanlike performance; and fraud.  OTM seeks damages arising from towage expenses, the cancellation of the charter agreement, survey expenses, additional repair costs, and other claimed damages associated with the work performed by Diversified.  OTM also asserts a claim for punitive damages.  Diversified now moves

4

for dismissal of plaintiff's claims for gross negligence,
recklessness, fraud, and punitive damages under Rule 12(b)(6).

## I. <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows
a party to move for dismissal of a complaint for failure to state
a claim upon which relief can be granted.  Such a motion is
rarely granted because it is viewed with disfavor.  <u>See</u> <u>Lowrey v.
Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting
<u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>,
677 F.2d 1045, 1050 (5th Cir. 1982)).  In considering a Rule
12(b)(6) motion, the Court "accepts 'all well-pleaded facts as
true, viewing them in the light most favorable to the
plaintiff.'"  <u>See</u> <u>Martin K. Eby Constr. Co. v. Dall. Area Rapid
Transit</u>, 369 F.3d 464 (5th Cir. 2004) (quoting <u>Jones v.
Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding
whether dismissal is warranted, the Court will not accept
conclusory allegations in the complaint as true.  <u>Kaiser</u>, 677
F.2d at 1050.  Indeed, the Court must first identify allegations
that are conclusory and, thus, not entitled to the assumption of
truth.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).  A
corollary: legal conclusions "must be supported by factual
allegations."  <u>Id.</u> at 678.  Assuming the veracity of the well-
pleaded factual allegations, the Court must then determine
"whether they plausibly give rise to an entitlement to relief."

Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and

conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Twombly, 550 U.S. at 555
(alteration in original) (citation omitted).

In deciding a motion to dismiss, the Court may consider documents
that are essentially "part of the pleadings."  That is, any
documents attached to or incorporated in the plaintiff's
complaint that are central to the plaintiff's claim for relief.
Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th
Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224
F.3d 496, 498-99 (5th Cir. 2000)).  Also, the Court is permitted
to consider matters of public record and other matters subject to
judicial notice without converting a motion to dismiss into one
for summary judgment.  See United States ex rel. Willard v.
Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir.
2003).

## II. Discussion

Diversified contends that plaintiff's claims for gross
negligence, recklessness, fraud, and punitive damages should be
dismissed pursuant to Rule 12(b)(6).  The Court can only agree
with respect to plaintiff's fraud claim.

### A.

The defendant first asserts that plaintiff fails to allege
facts to support claims of gross negligence and recklessness.
Specifically, defendant contends that OTM's complaint merely

7

offers labels and conclusions, and does not allege facts that suggest Diversified acted to willfully inflict harm on OTM or its crew members. Moreover, defendant asserts that these claims are founded on the very same allegations that form the basis of OTM's contractual claims against Diversified.

Gross negligence is defined as reckless and wanton misconduct. See Miles v. Melrose, 882 F.2d 976, 989 (5th Cir. 1989). Significantly, gross negligence is distinguished from ordinary negligence in that it "encompasses harm that is willfully inflicted or is caused by the wanton and reckless disregard for the safety of others." See Computalog U.S.A., Inc. v. Blake Drilling & Workover Co., Inc., No. 95-3009, 1996 WL 720761, at *2 (E.D. La. Dec. 9, 1996) (citing Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 411 (5th Cir. 1982)). The Court, accepting all well-pleaded facts as true and viewing them in a light most favorable to the plaintiff, finds that OTM states a gross negligence and recklessness claim that is plausible, albeit barely, on its face.

Although the Court agrees with the defendant that OTM's complaint lacks allegations to suggest that Diversified acted to willfully inflict harm on OTM, the Court finds that the complaint contains enough plausible factual allegations that allow the Court to draw a reasonable inference that the defendant may have acted with wanton and reckless disregard for the safety of

others.  Specifically, the Court finds troubling the allegation
that Diversified told OTM that it repaired the engines when in
fact it possibly had not.  OTM does not assert a mere conclusory
allegation; rather, OTM pleads alarming factual details about how
the engines and other vessel components failed, leaving the
vessels adrift off the coast of Colombia.  Moreover, OTM submits
an exhibit to its complaint, which the Court may consider in
deciding a motion to dismiss; it is a technical report from an
independent engine repair company, which concluded that repairs
and an overhaul of the engines had not occurred.  Again, on the
necessary assumption that all of these allegations are true, the
Court finds that OTM states a claim for gross negligence and
recklessness.  See Twombly, 550 U.S. at 555 ("Factual allegations
must be enough to raise a right to relief about the speculative
level, on the assumption that all the allegations in the
complaint are true (even if doubtful in fact).").

*B.*

    Defendant also contends that plaintiff fails to state a
claim for fraud.

    It is settled within the Fifth Circuit that a federal court
sitting in admiralty applies the common law of fraud.  See Black
Gold Marine, Inc. v. Jackson Marine Co., 759 F.2d 466 (5th Cir.
1985); Cargill, Inc. v. Degesch Am., Inc., No. 11-2036, 2012 WL
2367392 (E.D. La. June 21, 2012); Elmwood Dry Dock & Repair v.

9

H&A Trading Co., No. 93-2156, 1997 WL 781298 (E.D. La. Dec. 16, 1997).  Stating a fraud claim requires a plaintiff to allege:

1.  a false representation—usually of fact—made by the defendant;
2.  knowledge or belief on the part of the defendant that the representation is false, or an insufficient basis to make the representation;
3.  an intention to induce the plaintiff to act or refrain from acting in reliance on the information;
4.  justifiable reliance by the defendant; and
5.  damage to the plaintiff resulting from the reliance.

Cargill, 2012 WL 2367392, at *4.  Plaintiff's allegations of fraud implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Fifth Circuit has explained:

[The Fifth Circuit] interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.  Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue.

Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008) (citations and internal quotation marks omitted); see also Cargill, 2012 WL 2367392, at *4.  The second sentence of Rule 9(b) "relaxes the particularity requirement for conditions

of the mind such as scienter: Malice, intent, knowledge, and
other conditions of the mind may be alleged generally." Dorsey,
540 F.3d at 339 (internal quotation marks omitted).  But, while
Rule 9(b) "expressly allows scienter to be averred generally,"
simple allegations that defendant possesses fraudulent intent
will not satisfy Rule 9(b).  Id. (internal quotation marks
omitted). Rather, the plaintiff must "allege specific facts
supporting an inference of fraud."  Id.

    Strikingly absent from plaintiff's complaint are factual
allegations that invite an inference of fraudulent intent.  At
best, the complaint contains one allegation of intent:
"Diversified's representations that the vessels were repaired
were made with the intention that OTM pay for the repairs
purportedly made to the vessels and for OTM to undertake the
voyage to Colombia."  Significantly, "[p]laintiffs do not
sufficiently allege motive by making generic allegations that the
defendant had a financial interest in carrying out the alleged
fraud." McNamara v. Bre-X Minerals Ltd., 57 F. Supp. 2d 396, 405
(E.D. Tex. 1999); see Cargill, 2012 WL 2367392, at *4 (dismissing
plaintiff's claim because the allegation that the defendant had
performed in a certain manner when in fact it had not was
insufficient to allow for an inference of fraudulent intent).
Although the plaintiff explains at length in its opposition paper
how its complaint satisfies the other elements for a claim of

fraud, it glosses over the intent requirement in one sentence. Moreover, in rebutting the defendant's contentions, plaintiff still fails to persuade how its complaint contains special facts that underpin a fraudulent motive. The Fifth Circuit has mandated "*specific facts* supporting an inference of fraud," and without such allegations here, OTM's claim for fraud fails under Rule 12(b)(6) and the heightened pleading standard of Rule 9(b).

*C.*

Plaintiff's claim for punitive damages, however, brings the Court into less settled waters.[5] OTM asserts that punitive damages are appropriate here for two reasons. First, plaintiff is alleging claims rooted in general maritime law, and the U.S. Supreme Court's recent decision in <u>Atlantic Sounding Co. v. Townsend</u> established that punitive damages are available under federal maritime law for wanton, willful, or outrageous conduct. Second, punitive damages are available for OTM's breach of contract claims, because the conduct that breached the contract was also a tort for which punitive damages are recoverable.

---

[5] As a threshold issue, defendant contends that OTM lacks standing to seek punitive damages because none of the crew members that manned the two vessels are plaintiffs in this lawsuit. The defendant appears to miss the point of punitive damages, which are "aimed not at compensation but principally at retribution and deterring harmful conduct." <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 492 (2008). Moreover, it is unnecessary to surmise at this stage of the proceedings as to the measurement of any potential award.

In <u>Atlantic Sounding Co. v. Townsend</u>, a seaman sought to recover punitive damages in a general maritime suit for failure to pay maintenance and cure. 557 U.S. 404, 407 (2009). The Supreme Court addressed the narrow question of whether the general maritime claim of willful and wanton failure to pay maintenance and cure, which arises from common law, was limited to the remedies available under the Jones Act. <u>Id.</u> The Court noted that a claim for maintenance and cure was a separate cause of action from Jones Act claims and, therefore, the Jones Act limitations did not apply. <u>Id.</u> at 417-19. As a result, the Court held that punitive damages are recoverable for the general maritime claim of willful nonpayment of maintenance and cure. <u>Id.</u> at 418-19.

The scope of <u>Townsend</u> is still being assessed by the courts. The question remains whether punitive damages are also available for other claims stemming from general maritime law, including claims that do not involve personal injury. Case law within this Circuit reveals that courts have held that <u>Townsend</u> does not, in cases like this one, affect the availability of punitive damages in Jones Act claims, but does potentially allow for recovery in general maritime claims of gross, willful, and wanton negligence, and breach of contract claims if the conduct which constitutes the breach is also a tort for which punitive damages are recoverable. See <u>Scott v. Cenac Towing Co., LLC</u>, No. 12-811,

2012 WL 4372515, at *2 (E.D. La. Sept. 24, 2012) (holding that
<u>Townsend</u> does not change the proposition that punitive damages
are unavailable for Jones Act claims, but noting that the
decision does reinvigorate the debate as to punitive damages in
claims arising under general maritime law); <u>Ryan Marine Servs.,</u>
<u>Inc. v. Hudson Drydocks, Inc.</u>, No. 06-2245, 2011 WL 6209801, at
*4 (W.D. La. Dec. 13, 2011) ("[T]he Court concludes that,
generally, punitive or exemplary damages are not recoverable in
contract cases.  Punitive or exemplary damages are recoverable
only if the conduct which constitutes the breach is also a tort
for which punitive damages are recoverable."); <u>In re Oil Spill by</u>
<u>the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20,</u>
<u>2011</u>, MDL No. 2179, 2011 WL 4575696, at *11 (E.D. La. Sept. 30,
2011) ("As explained in <u>Townsend</u> . . . neither the Jones Act nor
the Death on the High Seas Act speaks to negligence claims
asserted by the non-seamen under general maritime law, and
punitive damages have long been available at common law.  The
Court finds punitive damages are available to . . . plaintiffs
who are not seamen."); <u>Rogers v. Resolve Marine</u>, No. 09-4141,
2009 WL 2984199, at *1 (E.D. La. Sept. 11, 2009) (acknowledging
that the law on this issue is unsettled, but allowing the
plaintiff to amend his complaint to assert a claim for punitive

damages for alleged gross, willful, and wanton negligence of the defendant in causing plaintiff's injuries).[6]

The trend appears to be that post-<u>Townsend</u>, courts have carefully considered the Supreme Court's holding that punitive damages have long been available at common law, that the common-law tradition of punitive damages extends to maritime law, and that unless evidence exists that the claim is to be excluded from this general admiralty rule (like the Jones Act, which explicitly limits damages), punitive damages are available.  In light of this, and the other decisions in this Circuit, the Court cannot conclude at this stage, in which the Court is limited to the pleadings, that the plaintiff is precluded from asserting a claim for punitive damages in connection with its general maritime law claims.  <u>See</u> <u>Rogers</u>, 2009 WL 2984199, at *1 (allowing plaintiff to assert a claim for punitive damages in light of the unsettled nature of this issue); <u>In re Md. Marine</u>, Inc., 641 F. Supp. 2d 579, 584-85 (E.D. La. 2009) ("In the light of the movement of the law in this area, the Court is willing to consider the

---

[6] For cases outside this Circuit that address punitive damages post-<u>Townsend</u>, see <u>Doe v. Royal Carribean Cruises, Ltd.</u>, No. 11-23321, 2012 WL 4479084, at *2 (S.D. Fla. Sept. 28, 2012) (holding that after <u>Townsend</u> punitive damages are available for general maritime claims of wanton, willful, or outrageous conduct); <u>Lobegeiger v. Celebrity Cruises, Inc.</u>, No. 11-21620, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) ("[A] plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." (internal quotation marks omitted)).

possibility of presenting the . . . claim as a separate part of
the damages sought in this case.  No judgment would be entered on
any award, however.  This would avoid retrial in the event the
law changes.").  This is not to say that upon further motion
practice or a merits trial, the plaintiff's claim for punitives
will survive (the Fifth Circuit requires a defendant to have
acted willfully and wantonly in order for punitive damages to be
awarded).

     Regarding plaintiff's breach of contract claims, defendant
asserts that punitive damages may not be awarded on contractual
claims regardless of the nature of the alleged wrongful conduct.
In support of its argument that punitive damages are recoverable
only in admiralty cases based in tort, Diversified relies on
Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1996),
and other cases outside of the Fifth Circuit, in particular
Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57 (2d Cir. 1985).
Notably, Guevara was abrogated by the Supreme Court in Townsend,
and Thyssen did not completely rule out punitive damages in
relation to contract cases; rather, the Second Circuit in Thyssen
held that punitive damages are recoverable for a breach of
contract if the conduct constituting the breach is also a tort
for which punitive damages are recoverable.  See Townsend, 557
U.S. at 429; Thyssen, 777 F.2d at 63 (citing RESTATEMENT (SECOND) OF
CONTRACTS § 355 (1979)).

16

The United States District Court for the Western District of Louisiana recently confronted the issue of whether punitive damages are available in a breach of contract case.  In <u>Ryan Marine Services, Inc. v. Hudson Drydocks, Inc.</u>, plaintiff entered into a contract with defendant to repair and overhaul a vessel, and during the course of the repair work, the vessel caught fire. 2011 WL 6209801, at *1.  Plaintiff sued defendants for breach of contract and fraud.  <u>Id.</u>  The court conceded that no other opinion in any other circuit addressed the scope of <u>Townsend</u> in a contract case, and, notably, employed the analysis used in <u>Townsend</u> and its progeny to hold that punitive damages are "recoverable only if the conduct which constitutes a breach is also a tort for which punitive damages are recoverable."  <u>Id.</u> at *4.  Significantly, the conduct in <u>Ryan Marine</u> that allegedly served as the contract breach did not also constitute a tort for which punitive damages are recoverable.  To the contrary, the conduct alleged here could well be conduct that would also constitute a tort for which punitive damages are recoverable, and the Court, finding the <u>Ryan Marine</u> case a helpful guide on this issue, cannot say that the plaintiff fails to state a claim under Rule 12(b)(6).

Accordingly, IT IS ORDERED that the defendant's motion to dismiss is GRANTED in part as to the plaintiff's fraud claim, and DENIED in part as to the plaintiff's claims for gross negligence,

17

recklessness, and punitive damages.   IT IS FURTHER ORDERED, that the plaintiff is allowed leave, as requested, to amend its pleading in accordance with this order.[7]

New Orleans, Louisiana, December 19, 2012

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

_____

[7]   See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) ("[O]ur cases support the premise that granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim . . . .   In view of the consequences of dismissal on the compliant alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citations and internal quotation marks omitted)).