UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

OPERACIONES TECNICAS MARINAS S.A.S.          CIVIL ACTION

v.                                           NO. 12-1979

DIVERSIFIED MARINE SERVICES, LLC ET AL.      SECTION F

ORDER AND REASONS

Before the Court is Diversified Marine Services, LLC's motion to dismiss plaintiff's fraud claim for failure to state a claim upon which relief can be granted.  For the reasons that follow, the motion is GRANTED.

Background

This case arises from a failed maritime voyage.

Operaciones Tenicas Marinas ("OTM") is a marine operating company based in Cartagena, Colombia.  OTM purchased two sister vessels, M/V MARY TIDE and M/V THOMAS TIDE, which had been out of service for several years.  In November 2010, OTM entered into a contract with Diversified Marine Services, LCC, to drydock the vessels, evaluate their condition, and determine the work necessary to make the vessels seaworthy.

From November 2010 to June 2011, Diversified allegedly communicated on a regular basis with OTM to relay recommendations based on its inspection of the vessels, obtain approval for maintenance and repair, and invoice and collect funds from OTM

1

for work performed.[1]  According to the plaintiff's complaint, OTM relied on the representations of Diversified and approved a schedule of work, which Diversified supposedly performed and told OTM it had performed.  OTM paid and satisfied all invoices, and on May 17, 2011, based on Diversified's assurances that the vessels were nearly ready for use, OTM entered into a bareboat charter agreement with Serviport S.A.[2]  According to the terms of the charter agreement, OTM was to deliver the vessels to Serviport on July 15, 2011.  OTM contends it informed Diversified of the charter agreement and Diversified told OTM that the vessels would be fit for the voyage to Colombia in sufficient time to commence the charter.

On or about June 20, 2011, OTM paid Diversified the outstanding balance for the vessel repairs.  In total, OTM paid $344,769.15 in repairs purportedly performed to both vessels.  OTM asserts that it relied upon the representations of Diversified that the following repairs had been made:

(1) the main engines of both vessels had been inspected;

(2) the center and starboard main engines of the M/V MARY

---

[1] Diversified allegedly identified twenty-four repairs to be made to the M/V MARY TIDE, and eighteen repairs for M/V THOMAS TIDE.

[2] The charter agreement provided for a six-month term, with an option to extend the charter for another six months.  The initial six month charter hire was $381,600.

TIDE had undergone full out-of-frame overhauls;[3]

(3) the center main engine of the M/V THOMAS TIDE had undergone an in-frame overhaul;[4]

(4) the gears transmitting the power between the main engine to the shaft of both vessels has been inspected and repaired;

(5) the rudder stocks and steering systems of both vessels has been inspected and repaired;

(6) the hull integrity of both vessels has been inspected for water leakage and possible compromised areas, and repair for laying the same had been recommended and performed;

(7) the necessary navigational equipment on both vessels had been inspected, tested, and repaired or replaced accordingly;

(8) the air-conditioning systems, along with other various systems, had been inspected and repaired as new.

On June 23, 2011, both vessels departed the Diversified shipyard for Cartagena, Colombia.  The vessels soon experienced severe mechanical and electrical problems, and became adrift approximately 340 miles from Cartagena, Colombia.  As a result, both vessels had to be towed the last leg of the voyage, first by the Colombian Navy and later by a commercial assist tug hired by OTM.

The vessels were surveyed upon arrival, and, OTM contends,

---

[3] This requires unbolting and completely removing the engines from the vessel.  Once removed, the engines are broken down to individual component pieces and cleaned.  All mechanical systems and wear items are then replaced with new parts, and the engines are then returned to the vessel.

[4] This involves replacing the major wear items of the engine while the engine remains mounted to the frame of the vessel.

several electrical and mechanical problems were discovered.  OTM
also claims that the engines for both vessels were disassembled
for inspection by an engine repair company, Stewart & Stevenson.
The results of the inspection concluded that the center main
engine of M/V THOMAS TIDE and the starboard main engine of M/V
MARY TIDE had not been overhauled as Diversified agreed.  Because
the vessels would be unavailable for delivery to Serviport on
July 15, 2011, OTM was in breach of the OTM-Serviport bareboat
charter agreement, which was ultimately terminated.

     OTM sued Diversified in this Court on July 31, 2012,
alleging claims for breach of contract; negligent
misrepresentation; intentional misrepresentation; negligence,
gross negligence, and recklessness; breach of warranty of
workmanlike performance; and fraud.  OTM seeks damages arising
from towage expenses, the cancellation of the charter agreement,
survey expenses, additional repair costs, and other claimed
damages associated with the work performed by Diversified.  OTM
also asserts a claim for punitive damages.  On November 27, 2012,
Diversified moved under Rule 12(b)(6) to dismiss plaintiff's
claims for gross negligence, recklessness, fraud, and punitive
damages.  On December 19, 2012, the Court granted Diversified's
motion in part as to plaintiff's fraud claim, and denied the
motion in part as to plaintiff's claims for gross negligence,
recklessness, and punitive damages.  The Court further granted

4

the plaintiff leave to amend its pleading as to the fraud claim, and the plaintiff filed its second amended complaint on January 10, 2013.  Diversified now moves for dismissal under Rule 12(b)(6), alleging that plaintiff's claim for fraud still fails to state a cause of action for which relief can be granted.

## I. <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  <u>See</u> <u>Lowrey v. Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982)).  In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>See</u> <u>Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit</u>, 369 F.3d 464 (5th Cir. 2004) (quoting <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  <u>Kaiser</u>, 677 F.2d at 1050.  Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).  A corollary: legal conclusions "must be supported by factual

allegations." <u>Id.</u> at 678.  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 556 U.S. at 678)(internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> at 678 (internal

quotations omitted) (citing <u>Twombly</u>, 550 U.S. at 557).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (alteration in original) (citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings." That is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief. <u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment. <u>See</u> <u>United States ex rel. Willard v. Humana Health Plan of Tex. Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003).

## II. <u>Discussion</u>

Defendant contends that plaintiff's fraud claim fails to state a claim upon which relief can be granted, because the complaint still fails to allege facts that support an inference of fraudulent intent. The Court agrees.

*A.*

It is settled within the Fifth Circuit that a federal court sitting in admiralty applies the common law of fraud.  See Black Gold Marine, Inc. v. Jackson Marine Co., 759 F.2d 466 (5th Cir. 1985); Cargill, Inc. v. Degesch Am., Inc., 875 F. Supp. 2d 667, 674 (E.D. La. 2012); Elmwood Dry Dock & Repair v. H&A Trading Co., No. 93-2156, 1997 WL 781298 (E.D. La. Dec. 16, 1997). Stating a fraud claim requires a plaintiff to allege:

1.  a false representation—usually of fact—made by the defendant;

2.  knowledge or belief on the part of the defendant that the representation is false, or an insufficient basis to make the representation;

3.  an intention to induce the plaintiff to act or refrain from acting in reliance on the information;

4.  justifiable reliance by the defendant; and

5.  damage to the plaintiff resulting from the reliance.

Cargill, 875 F. Supp. 2d at 674.  Plaintiff's allegations of fraud implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Fifth Circuit has explained:

8

> [The Fifth Circuit] interprets Rule 9(b) strictly,
> requiring a plaintiff [who pleads] fraud to specify the
> statements contended to be fraudulent, identify the
> speaker, state when and where the statements were made,
> and explain why the statements were fraudulent.  Put
> simply, Rule 9(b) requires the complaint to set forth the
> who, what, when, where, and how of the events at issue.

<u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 339 (5th Cir.

2008) (citations and internal quotation marks omitted); <u>see</u> <u>also</u>

<u>Cargill</u>, 875 F. Supp. 2d at 675.  The second sentence of Rule

9(b) "relaxes the particularity requirement for conditions of the

mind such as scienter: Malice, intent, knowledge, and other

conditions of the mind may be alleged generally." <u>Dorsey</u>, 540

F.3d at 339 (internal quotation marks omitted).  But, while Rule

9(b) "expressly allows scienter to be averred generally,"

conclusory allegations that defendant possesses fraudulent intent

will not satisfy Rule 9(b). <u>Id.</u> (internal quotation marks

omitted). Rather, the plaintiff must "allege specific facts

supporting an inference of fraud." <u>Id.</u> Fraudulent intent can be

inferred by alleging facts that show the defendant's motive to

commit the alleged fraud, or that identify circumstances that

indicate conscious behavior on the part of the defendant.  <u>Id.</u>

*B.*

Regarding plaintiff's fraud claim, this Court noted in its

December 19, 2012 Order and Reasons:

> Strikingly absent from plaintiff's complaint are
> factual allegations that invite an inference of
> fraudulent intent.  At best, the complaint contains one
> allegation of intent:  "Diversified's representations

> that the vessels were repaired were made with the
> intention that OTM pay for the repairs purportedly made
> to the vessels and for OTM to undertake the voyage to
> Colombia."

Rec. Doc. 14 at 11.  The Court went on to explain that

"'[p]laintiffs do not allege motive by making generic allegations

that the defendant had a financial interest in carrying out the

alleged fraud.'"  Rec. Doc. 14 at 11 (quoting McNamara v. Bre-X

Minerals Ltd., 57 F. Supp. 2d 396, 405 (E.D. Tex. 1999)).  The

Court further granted the plaintiff leave to amend its complaint

in accordance with the December 19, 2012 Order and Reasons.

Plaintiff's second amended complaint, with the exception of

two paragraphs, basically reurges the same facts as the

plaintiff's previous papers.  The two notable changes, found in

paragraphs 71 and 72, state:

> These facts suggest Diversified anticipated the MARY
> TIDE and THOMAS TIDE would be in, or well on their way
> to, Colombia by the time Diversified's failure to perform
> the engine overhauls and rebuilds OTM contracted and paid
> for, and other defects in Diversified's workmanship, were
> discovered such that OTM's recourse would be limited or
> somehow restricted by the distance between the vessels
> and Diversified.
>
>         . . . .
>
> Diversified's representations concerning the repairs
> to the MARY TIDE and THOMAS TIDE were made with the
> intention to induce OTM into believing the vessels were
> fit for service as typical offshore crewboats and to
> accept delivery of the MARY TIDE and THOMAS TIDE.
> Further, Diversified's representations concerning the
> vessel repairs were made with the intent to defraud OTM,
> knowledge of the falsity of those representations and/or
> a reckless disregard for the truth. . . .

Rec. Doc. 21 at 4-5.  Plaintiff contends that fraudulent intent
can be inferred here because (1) the complaint contains factual
allegations that indicate conscious behavior on the part of
Diversified, (2) the complaint also shows Diversified's motive to
commit the alleged fraud, and (3) Diversified's breach of
contract is sufficient to show fraudulent intent.

First, plaintiff asserts that the factual allegations in its
second amended complaint show Diversified's conscious behavior to
defraud OTM.  Specifically, plaintiff contends that Diversified
knew the repairs were not made when Diversified represented that
the vessels were fit for service.  Further, plaintiff asserts
that this Court has already held that these factual allegations
are sufficient to state a claim for gross negligence and
recklessness, for which the standard is wanton, willful, or
outrageous conduct.  <u>See</u> Rec. Doc. 14 at 7-9.  The Court notes,
however, that in its earlier Order and Reasons, it held that "OTM
states a gross negligence and recklessness claim that is
plausible, albeit barely, on its face."  Rec. Doc. 14 at 8.
Importantly, the standard for evaluating the sufficiency of a
pleading for a claim of gross negligence and recklessness is Rule
8, whereas a claim of fraud involves Rule 9's special heightened
pleading standard.  <u>See</u> <u>Cargill</u>, 275 F. Supp. 2d at 676 (noting
the difference between evaluating a case under the Rule 8
standard and the Rule 9(b) standard).  The Court cannot find, on

11

the pleadings before it, that the plaintiff has alleged facts to
indicate that Diversified consciously behaved in a manner to
*induce* plaintiff's conduct based on alleged false statements.
There is a vast distinction between conscious disregard for the
safety of others, and the conscious intention or bad motive to
induce the plaintiff to behave in a certain way.  Merely stating
that Diversified's representations concerning the repairs were
made "with the intention to induce OTM into believing the vessels
were fit for service . . . and to accept delivery" and that
"Diversified's representations concerning the vessel repairs were
made with the intent to defraud OTM" is not enough to satisfy
Rule 9(b).  The Fifth Circuit has expressly held that
"'[a]lthough Rule 9(b) expressly allows scienter to be 'averred
generally', simple allegations that defendants possess fraudulent
intent will not satisfy Rule 9(b).'" <u>Dorsey</u>, 540 F.3d at 339
(quoting <u>Melder v. Morris</u>, 27 F.3d 1097, 1102 (5th Cir. 1994)).

     Second, plaintiff asserts that its second amended complaint
contains factual allegations sufficient to show Diversified's
motive.  Plaintiff contends that Diversified had the motive and
opportunity to deceive because "it is easier to deceive when the
object of the deception is remote."  Therefore, plaintiff's
argument goes, because Diversified knew the vessels would be well
on their way to Colombia before the faulty repairs were
discovered, and plaintiff's recourse would be limited because of

the distance between the vessels and Diversified, Diversified had the requisite fraudulent intent.

Plaintiff indicates no motive for Diversified to provide false statements about its repairs other than the tenuous and conclusory argument that Diversified had motive because it knew the vessels would be mid-voyage before the faulty repairs were discovered.  The only other motive that can be inferred from plaintiff's second amended complaint is that of financial incentive, which, as this Court stated before, is insufficient for a claim of fraud.  See McNamara, 57 F. Supp. 2d at 405 ("Plaintiffs do not sufficiently allege motive by making generic allegations that the defendant had a financial interest in carrying out the alleged fraud.").  The Court cannot infer an illicit motivation without facts to support such an inference. The allegations that the vessels broke down and the surveyors believe work was not performed as requested may certainly lend credence to a breach of contract claim, or claims of negligence, but, as currently stated in plaintiff's complaint, they do not serve as a sufficient basis for fraud.

Third, plaintiff contends that Diversified's breach of contract serves as evidence of fraudulent intent.  The Fifth Circuit has stated:

> Generally, "there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed." . . . However, where the nonperformance is coupled with other probative

13

factors, such as "where only a short time elapses between
the making of the promise and the refusal to perform it,
and there is no change in the circumstances," an intent
not to perform when the promise was made may, in
appropriate circumstances, be properly inferred.

United States v. Shah, 44 F.3d 285, 293 n.14 (5th Cir. 1995)

(citations omitted) (quoting 37 AM. JUR. 2d Fraud and Deceit §§

68, 478 (footnotes omitted)).  Plaintiff contends that

Diversified allegedly began to perform repairs in November 2010,

and misrepresented the repairs had been performed in June 2011.

Further, plaintiff asserts that the distance between the parties

dictated that the plaintiff rely on Diversified to identify and

perform the necessary repairs, or report to plaintiff that it was

unable to do so.  Therefore, plaintiff submits that Diversified's

misrepresentations in such close proximity to undertaking

performance suggest that Diversified never intended to perform

the repairs.  The Court cannot agree that approximately seven

months is so short a time frame to negate the general rule that

"there is no inference of fraudulent intent not to perform from

the mere fact that a promise made is subsequently not performed."

Id.

Accordingly, the defendant's motion to dismiss plaintiff's

fraud claim is GRANTED.  Plaintiff's other claims remain viable.

New Orleans, Louisiana, February 20, 2013

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

14