UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OPERACIONES TECNICAS MARINAS S.A.S. | CIVIL ACTION |
| VERSUS | NO:   12-1979 |
| DIVERSIFIED MARINE SERVICES, LLC, ET AL. | SECTION: "F" (4) |

ORDER

Before the Court is a **Motion for Leave to File Second Amended Complaint for Compensatory and Punitive Damages (R. Doc. 53)** filed by the Plaintiff, Operaciones Tecnicas Marinas S.A.S. ("OTM"), seeking to add as defendants St. Paul Fire and Marine Insurance Company ("St. Paul") and Robert Boudreaux, Sr., and seeking to re-allege its previously dismissed fraud claim. The motion is opposed. *See* R. Doc. 55.

I.      **Background**[1]

This case arises out of a failed maritime voyage from Houma, Louisiana to Cartagena, Colombia. OTM is a marine operating company based in Cartagena, Colombia that purchased two sister vessels, M/V MARY TIDE and M/V THOMAS TIDE, which had been out of service for several years. In November 2010, OTM entered into a contract with defendant, Diversified Marine Services, LLC ("Diversified"), to drydock the vessels, evaluate their condition, and determine the work necessary to make the vessels seaworthy.

Between November 2010 to June 2011, Diversified allegedly commenced work on the vessels and OTM approved a schedule of work that Diversified supposedly performed and told OTM it had performed. On May 17, 2011, based on Diversified's assurances that the vessels were nearly ready for use, OTM entered into a bareboat charter agreement with Serviport S.A. that was scheduled to commence on July 15, 2011. OTM contends that it informed Diversified of

---

[1] For a complete and thorough summary of the background in this lawsuit, *see Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 864 (E.D. La. 2013); *see also* R. Doc. 29.

the charter agreement and Diversified told OTM that the vessels would be fit for the voyage to Colombia in sufficient time to commence the charter.

OTM paid Diversified a total of $344,769.15 in repairs[2] purportedly performed to both vessels and on June 23, 2011, both vessels departed the Diversified shipyard for Cartagena, Colombia. During the voyage, the vessels experienced severe mechanical and electrical problems and had to be towed the last leg of the voyage. Upon inspection of the engines, OTM learned that the center main engine of M/V THOMAS TIDE and the starboard main engine of M/V MARY TIDE had not been overhauled as Diversified agreed. Due to the condition of the vessels, OTM was allegedly in breach of the OTM-Serviport bareboat charter agreement because the vessels were unavailable for delivery to Serviport on July 15, 2011.

OTM initiated this action on July 31, 2012 alleging claims for breach of contract; negligent misrepresentation; intentional misrepresentation; negligence, gross negligence, and recklessness; breach of warranty of workmanlike performance; and fraud. On December 19, 2012, the Court dismissed OTM's fraud claim for failure to allege fraudulent intent and granted OTM leave to amend its pleading as to its fraud claim. *See* R. Doc. 14. OTM filed its second amended complaint on January 10, 2013. On February 20, 2013, the Court, once again, dismissed OTM's fraud claim on the grounds that it failed to plead factual allegations that invite an inference of fraudulent intent. *See* R. Doc. 29.

On August 12, 2013, the Court issued a stay of the proceedings due to an allegation that one of the parties was engaged in witness tampering. *See* R. Doc. 38. On February 4, 2014, the

---

[2] The repairs allegedly made include: (1) the main engines of both vessels were inspected; (2) the center and starboard main engines of the M/V MARY TIDE had undergone full out-of-frame overhauls; (3) the center main engine of the M/V THOMAS TIDE had undergone an in-frame overhaul; (4) the gears transmitting the power between the main engine to the shaft of both vessels were inspected and repaired; (5) the rudder stocks and steering systems of both vessels were inspected and repaired; (6) the hull integrity of both vessels were inspected for water leakage and possible compromised areas, and repair for laying the same had been recommended and performed; (7) the necessary navigational equipment on both vessels were inspected, tested, and repaired or replaced accordingly; (8) the air-conditioning systems, along with other various systems, were inspected and repaired as new.

Court granted OTM's motion to lift the stay on the proceedings due to the conclusion of the investigation into witness tampering. *See* R. Doc. 45. A new Scheduling Order (R. Doc. 50) was issued on March 10, 2015, setting April 9, 2015 as the deadline to amend.

In the subject motion, OTM seeks to add two new defendants, St. Paul and Boudreaux, and to re-allege the previously dismissed fraud claim. *See* R. Doc. 53. OTM contends that it seeks to add St. Paul as a defendant because it was Diversified's liability insurer for the relevant time of the incident. *Id*. As for Boudreaux, OTM argues that it seeks to add him as a defendant because he is a principal of Diversified and he intentionally misrepresented the work Diversified performed. *See* R. Doc. 58. OTM also seeks to re-allege the fraud claim with particularity the who, what, when, where, and how required under Federal Rules of Civil Procedure 9(b). *See* R. Doc. 53-1.

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." This, and other federal rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Thus, Rule 15(a) evinces a liberal and lenient amendment policy and a motion to amend should not be denied absent a substantial reason to do so.  *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).  Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981).  Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Id*.

Leave to amend is by no means automatic, but is within the sound discretion of the trial court. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). In exercising its discretion, the trial court must determine that there is a "substantial reason" for the delay. *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). The Court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

### III.     Analysis

To assess whether leave should be granted, the Court will apply the Rule 15(a) factors. The Rule 15(a) factors are applied when a party seeks leave to amend within the deadline permitted by the Scheduling Order. Here, the Scheduling Order (R. Doc. 50) set the amendment deadline as thirty (30) days from March 10, 2015, which is the date the Scheduling Order was issued. Thirty (30) days from March 10, 2015 set the amendment deadline as April 9, 2015. OTM originally filed the subject motion on April 9, 2010, but the motion was marked deficient by the Clerk of Court because OTM did not seek leave of court. OTM was given seven (7) days to remedy the deficiency, and OTM refiled on April 10, 2015, which was within the seven (7) day deadline. Therefore, the subject motion is timely and the Court shall apply the liberal standard of Rule 15(a).

####     A.     Undue Delay, Bad Faith, or Dilatory Motive

OTM contends that the motion is timely because it was filed within the Scheduling Order deadline. *See* R. Doc. 53-1, at 5. OTM further argues that it was not delayed in seeking leave to amend its complaint because it learned during discovery that St. Paul furnished liability insurance coverage to Diversified and that Boudreaux was individually and directly involved in

4

the inspection and repair of the vessels. *See id*. at 2; *see also* R. Doc. 58, at 11-12. As for the fraud claim, OTM does not contest that the work tickets were produced more than two years ago, but contends that it did not receive the testimony of Boudreaux until July 17, 2013, shortly before the stay was commenced on August 12, 2013. *See* R. Doc. 58, at 11. OTM argues that the testimony of Boudreaux showed that he and Diversified "knew additional parts were needed to perform the overhauls, that the work tickets show those parts were not provided, and that the work tickets show additional parts and components that would have been included with overhaul kits had such kits been provided." *Id*. at 11-12.

In opposition, Diversified argues that OTM contends that its proposed complaint is based on new information, but the work tickets relied upon were produced in discovery more than two years ago. *See* R. Doc. 55, at 12. Additionally, Diversified contends that OTM knew before this litigation was filed that Boudreaux was a principal of Diversified. *See id*. at 17; *see also* R. Doc. 59, at 7. Diversified avers that the principal of OTM, Gonzalo Martinez, testified that he negotiated the terms of the agreement for the repairs with Boudreaux and that he knew that Boudreaux was supervising the repairs. *See* R. Doc. 59, at 7.

Delay alone does not justify denial of a motion to amend. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Rather, denial of a motion under Rule 15(a) is appropriate where the delay is "undue" in that it prejudices the nonmoving party or places an unfair burden on the Court. *Mayeaux*, 376 F.3d at 427 (citing *Dussouy v. Gulf coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)); *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984), *cert denied*, 469 U.S. 1122, 105 S. Ct. 8069888 (1985). Although Rule 15(a) does not impose a time limit "for permissive amendment, 'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992)). In such a situation, the plaintiff bears the burden of showing

that delay to be "'due to oversight, inadvertence, or excusable neglect.'" *Id.* (quoting *Mitchell*, 634 F.2d at 203).

Under the circumstances in this action, the Court finds that there was undue delay in OTM's request to add Boudreaux as a defendant. OTM contends that it recently learned during Boudreaux's deposition of his involvement in the underlying events that constitute the basis of this lawsuit. However, a review of the transcript from the deposition of Martinez, OTM's principal, reveals that OTM entered into a contract with Diversified through Boudreaux and that OTM was allegedly told by Boudreaux that the vessels were seaworthy. *See* R. Doc. 59-1, at 9-14 (Martinez Dep. 47:20-48:10, 53:1-54:19, 100:1-16, June 7, 2013). According to Martinez's own testimony, OTM was on notice of Boudreaux's involvement at the time OTM filed this action because Martinez directly interacted with Boudreaux during the entire transaction.

Additionally, the Court notes that OTM has failed to provide any rationale for its delay in adding Boudreaux. OTM represents that it learned of Boudreaux's involvement from his deposition on July 17, 2013, however, a review of the excerpts of the deposition demonstrates that the deposition did not reveal new information regarding his general involvement. The pleading standard only requires the plaintiff to allege factual allegations that are enough to raise a right to relief above the speculative level and are plausible on their face. *Guidry v. Am. Pub. Life Ins. Co*., 512 F.3d 177, 180 (5th Cir. 2007). At the time this action was filed, OTM knew of Boudreaux's involvement and could have attempted to allege factual allegations against him. Accordingly, OTM's request to add Boudreaux at this late stage is denied for undue delay.

As for OTM's requests to add St. Paul as an additional defendant and to re-allege a cause of action for fraud, the Court finds that these proposed amendments are not unduly delayed. OTM contends that it first learned during discovery that St. Paul is Diversified's liability insurer and Diversified did not object to this contention. OTM also contends that it obtained evidence

during discovery that forms the foundation of its fraud claim, which includes the work tickets and the testimony of Boudreaux on July 17, 2013. OTM's fraud claim heavily relies on both the work tickets and Boudreaux's testimony, and therefore, the Court finds that OTM was not unduly delayed in seeking an amendment because this action was stayed less than a month after the deposition of Boudreaux.

### B.     Repeated Failure to Cure Deficiencies by Amendments Previously Allowed

Diversified contends that OTM has failed on two prior occasions to adequately state a cause of action for fraud. *See* R. Doc. 55, at 16. Diversified argues that the current proposed amended complaint does not allege new additional facts that differ from OTM's previous allegations of fraud that were dismissed by the Court. *Id.* at 17; *see also* R. Doc. 59, at 6. Diversified asserts that OTM has always argued that Diversified charged OTM for overhauls that were not performed and that the non-performance was deliberate and motivated by a desire for profit. *See* R. Doc. 59, at 6.

When considering whether there have been repeated failures to cure deficiencies by amendments previously allowed, courts in this circuit have considered how many previous amendments were attempted by the mover. *See U.S. ex rel. Hebert v. Dizney,* 295 F. App'x 717, 725 (5th Cir. 2008); *Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369, 377 (W.D. Tex. 2013); *Vazquez v. AMO Enterprises, Inc.*, No. 3:12-CV-00029-KC, 2013 WL 593457, at *5 (W.D. Tex. Feb. 14, 2013). Courts have found that one previous amendment does not amount to a repeated failure to cure deficiencies by amendments previously allowed. *Mailing & Shipping Sys., Inc.*, 292 F.R.D. at 377; *Vazquez*, 2013 WL 593457, at *5. However, the Fifth Circuit has found that two previous amendments does amount to a repeated failure to cure deficiencies. *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 566 (5th Cir. 2002); *U.S. ex rel. Hebert*, 295 F. App'x at 725.

Here, OTM has only amended its complaint once and for the limited purpose of re-alleging its fraud claim after the claim was dismissed pursuant to Rule 12(b)(6). While this is OTM's third attempt to allege fraud against Diversified, it is only its second attempt to amend its complaint. Therefore, the Court finds that OTM has not repeatedly failed to cure deficiencies by amendments previously allowed.

### C.   Undue Prejudice to the Opposing Party

OTM contends that the proposed amendment would not result in undue prejudice to the opposing parties because the new allegations are supported by evidence that was already produced during the parties' initial discovery efforts. *See* R. Doc. 53-1, at 5. OTM further argues that the original complaint included allegations against St. Paul, who at the time was Diversified's unnamed liability insurer. *See* R. Doc. 58, at 13.

Diversified asserts that it would be prejudice by virtue of allowing the amendment because extensive discovery was completed almost two years ago. *See* R. Doc. 59, at 4. Diversified contends that little additional discovery will be needed before trial if the amendments are barred. *Id*.

The Fifth Circuit has cautioned that amendments should not be permitted where they would "fundamentally alter the nature of the case." *Mayeaux*, 376 F.3d at 427–28 (finding that the complaint would be "fundamentally altered" where proposed amendment would destroy jurisdiction and "effectively reconstruct[] the case anew"). This is consistent with the principle that "[u]ndue prejudice to the defendant may result from expanding the allegations of the complaint beyond the scope of the initial complaint." *Liberty Mut. Ins. Co. v. Gunderson*, No. 2:04-CV-02405, 2014 WL 2109901, at *2 (W.D. La. May 19, 2014) (citing *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir.1999)). In general, a defendant is prejudiced if an added claim would require the defendant "to reopen discovery and prepare a defense for a claim different from the

8

[one] . . . that was before the court." *Smith*, 393 F.3d 590, 596 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)). However, amendments that merely propose alternative legal theories for recovery on the same underlying facts should be permitted "as they advance Rule 15(a)'s policy of promoting litigation on the merits rather than on procedural technicalities." *Mayeaux*, 376 F.3d at 427.

In this case, the proposed amendments are based on the same underlying facts alleged in the original complaint. While the fraud claim was twice dismissed from the original complaint and the second amended complaint, Diversified has been on notice of the claim since the initial filing of the suit. Additionally, Diversified has admitted that the fraud claim in the proposed amended complaint is the same as OTM's prior attempts to allege fraud. Therefore, based on Diversified's own admission, the proposed fraud claim does not fundamentally alter the case. As for the addition of St. Paul as Diversified's liability insurer, the allegations against the proposed defendant are also based on the same underlying facts alleged in the new complaint.

### D.   Futility of the Amendment

Futility is an important consideration when determining whether to grant leave to amend. A court may deny a motion for leave to amend where "the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (emphasis added). Where viability of a claim is at least facially possible, futility does not provide grounds for granting an amendment. *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 353–54 & n. 6 (5th Cir. 2011).

In considering this final factor, the Court must consider the futility of each of the proposed additions, which include re-alleging fraud against Diversified and alleging a direct action against St. Paul pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:1269. The Court shall consider each of these in turn.

### 1. Futility of Fraud Claim

OTM contends that it seeks to re-allege its new fraud claim based on evidence that was produced during discovery, specifically work tickets and Boudreaux's deposition testimony. *See* R. Doc. 53-1, at 2. OTM argues that the work tickets, which are used internally as a record of the parts used, did not list the overhaul kits required to rebuild the engine, but listed individual parts that would normally be encompassed in the prepackaged overhaul kits. *Id*. at 3. OTM contends that the absences of the overhaul kits on the work tickets demonstrate that Diversified did not provide all the parts needed to overhaul or rebuild the engine, despite it charging OTM for the overhaul. *Id*.

OTM argues that during Boudreaux's deposition, he was unable to explain why the overhaul kits were not included on Diversified's daily work tickets and why specific parts that would have been included in those kits were included in the daily work tickets. *See* R. Doc. 58, at 8. OTM contends that if an overhaul kit was actually used, as is required to rebuild an engine, the individual internal components would not have been separately listed on the work tickets. OTM asserts that the reasonable inference to be drawn from Boudreaux's testimony and the missing overhaul kits on the work tickets is that Diversified and Boudreaux knowingly defrauded OTM by intentionally misrepresenting the work Diversified performed to the vessels. *Id*.

As for the Court's prior decisions dismissing OTM's fraud claim for failing to allege facts that support fraudulent intent, OTM contends that its proposed amended complaint has additional evidence, including the benefit of Boudreaux's deposition. *Id*. at 16. OTM contends that the new evidence supports an inference of fraudulent intent because it demonstrates Diversified and Boudreaux had knowledge of the missing parts on the work tickets but subsequently represented that the engines were overhauled or rebuilt. *Id*.

In opposition, Diversified contends that the Court has twice rejected OTM's efforts to allege a cause of action for fraud and that the Court should consider these failed attempts when evaluating the merits of OTM's current motion. *See* R. Doc. 59, at 8. Diversified asserts that the proposed amended complaint does not cure the deficiencies from OTM's prior attempts to allege fraud and that the only new information provided by OTM is the work tickets. *See* R. Doc. 55, at 12.

However, Diversified contends that OTM's allegation that the absence of the overhaul kits on the work tickets implies fraudulent intent, fails to adequately allege that Diversified consciously or intentionally misled OTM. *Id*. Diversified avers that OTM fails to mention that Boudreaux clearly explained in his testimony that the overhaul kits are never included on work tickets because they are already accounted for in the fixed price of each overhaul. *Id*. at 6.

Under the Federal Rules of Civil Procedure, "allegations of fraud implicate the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 675 (E.D. La. 2012) (citing *Conerly Corp. v. Regions Bank*, 2008 WL 4975080, at *10, 2008 U.S. Dist. LEXIS 94674, at *27–28 (E.D. La. 2008). Rule 9(b) requires a litigant to plead with particularity the circumstances constituting fraud, but allows knowledge, intent, and malice to be averred generally. The Fifth Circuit has held that "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citing *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). The purpose of the heightened standard for pleading fraud is to ensure that an opposing litigant will have sufficient information to defend against the fraud allegation. *U.S. ex rel. Stewart v. The Louisiana Clinic*, No. CIV.A. 99-1767, 2002 WL 257690, at *2 (E.D. La. Feb. 22, 2002) (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

While Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter, case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. *Tuchman*, 14 F.3d at 1068 (5th Cir. 1994). "Rather, the plaintiff[] 'must allege specific facts supporting an inference of fraud.'" *Cargill, Inc.*, 875 F. Supp. 2d at 675 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)). The Fifth Circuit has found that "alleged facts are sufficient to support an inference of fraudulent intent if they either '(1) show a defendant's motive to commit [ ] fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant.'" *Cargill, Inc.*, 875 F. Supp. 2d at 675 (quoting *Herrmann Holdings Ltd.*, 302 F.3d at 565).

Here, the Court once again finds that OTM fails to allege facts sufficient to support an inference of fraudulent intent. The Court rejected OTM's prior attempts to allege fraud because OTM made a generic allegation that Diversified had a financial interest in carrying out the alleged fraud and because it failed to "allege[] facts to indicate that Diversified consciously behaved in a manner to *induce* plaintiff's conduct based on alleged false statements." *Operaciones Tecnicas Marinas S.A.S.*, 926 F. Supp. 2d at 864 (emphasis in original). Additionally, the Court noted that there is "a vast distinction between conscious disregard for the safety of others, and the conscious intention or bad motive to induce the plaintiff to behave in a certain way." *Id*. The Court further stated that it "cannot agree that approximately seven months is so short a time frame to negate the general rule that 'there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed.'" *Id*. (citing *United States v. Shah*, 44 F.3d 285, 293 n. 14 (5th Cir. 1995)).

The new allegations pertaining to the work tickets are not enough to create an inference of fraudulent intent beyond what has already been alleged and dismissed by the Court. The work tickets were internal documents prepared by the mechanics and according to Boudreaux's testimony, the work tickets do not list the overhaul kits because there was a firm price for the overhaul that included

12

all the internal components needed for the overhaul. *See* R. Doc. 53-16, at 7 (Boudreaux Dep. 148:5-14, July 17, 2013). Boudreaux further testified that the individual components that were listed on the work ticket, even though they are normally included in an overhaul kit, were probably listed on the work ticket to document that the mechanic had to find additional parts because those components were missing from the overhaul kit due to another mechanic using them on another job. *Id*. at 6 (Boudreaux Dep. 147:17-148:4, July 17, 2013).

While Boudreaux's testimony may be self-serving, OTM does not provide any additional evidence to contradict Boudreaux's explanation for the missing overhaul kits on the work tickets and the presence of the individual components on the work tickets. OTM contends that an overhaul kit was not used and implies that Diversified only used the individual components listed on the work ticket, but fails to provide additional objective evidence to support this contention.[3] Based on Boudreaux's testimony and the lack of evidence provided by OTM, the Court finds that OTM fails to allege facts that allege Diversified's motive to commit fraud or identify circumstances that indicate conscious behavior on the part of Diversified. Therefore, OTM's fraud claim is futile because it fails to allege a claim for fraud that is plausible on its face.

### 2. **Futility of adding St. Paul**

OTM contends, and Diversified does not object, that during discovery it learned St. Paul was Diversified's liability insurer who provided coverage for the policy period of July 24, 2010 through July 24, 2011. OTM now seeks to add a direct action against St. Paul under Louisiana's Direct Action Statute, which allows an injured person to have a right of direct action against the insurer if "the insurance contract was written or delivered in Louisiana or the incident sued upon occurred within the state." *Glaze v. G & B Marine, Inc.*, No. CIV. A. 95-1845, 1996 WL 566457, at *1 (E.D. La. Oct. 3, 1996). Here, OTM alleges that Diversified is a Louisiana limited liability

---

[3] According to the testimony of Oscar Guerrero, the gentlemen who inspected the engines, he was unable to identify the dates of the parts to determine if or when the engine was overhauled because he did not disassembled the engine. *See* R. Doc. 55-1, at 31(Geurro Dep., 30:25-31:8, July 30, 2013).

company and that St. Paul is authorized to do business in the state of Louisiana. Based on the foregoing, it can be inferred that the insurance contract was written or delivered in Louisiana. Additionally, the contract or agreement that establishes the basis of this action occurred in Louisiana and the injury alleged in the complaint emanates from the contract or agreement. Therefore, the Court finds that OTM's claim against St. Paul is not futile and that OTM shall be permitted to add St. Paul as a defendant.

## IV.     Conclusion

**IT IS ORDERED** that the OTM's **Motion for Leave to File Second Amended Complaint for Compensatory and Punitive Damages (R. Doc. 53)** is **DENIED in part and GRANTED in part. It is DENIED** as to the Plaintiff's request to add Robert Boudreaux as a defendant and to re-allege fraud. **It is GRANTED** as to the Plaintiff's request to add St. Paul Fire and Marine Insurance Company as a defendant.

**IT IS FURTHER ORDERED** that the Plaintiff file its Third Amended Complaint for Compensatory and Punitive Damages, according to the Court's rulings herein, **by July 20, 2015**.

New Orleans, Louisiana, this <u>13th</u> day of July 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**