UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

OPERACIONES TECNICAS MARINAS S.A.S.          CIVIL ACTION

v.                                           NO. 12-1979

DIVERSIFIED MARINE SERVICES, LLC, ET AL.     SECTION "F"

ORDER AND REASONS

Before the Court are four motions: (1) Diversified's motion to dismiss as sanctions for witness tampering, for which the Court granted oral argument; (2) Diversified's motion for summary judgment; (3) Diversified's motion for partial summary judgment to dismiss gross negligence, recklessness, and punitive damages claims; and (4) OTM's motion to amend its witness and exhibit list. For the reasons that follow, the motion to dismiss is DENIED; the motion for summary judgment is GRANTED; the motions for partial summary judgment and to amend the witness and exhibit list are DENIED AS MOOT.

Background

The facts of this case, which arises from a failed maritime voyage, have been recounted in detail in previous Orders and Reasons.[1] Operaciones Técnicas Marinas, a Colombian company, hired a Louisiana company, Diversified Marine Services, LLC, to make some

---

[1] See, for example, Order and Reasons, dated February 20, 2013.

1

repairs on two old sister vessels, M/V MARY TIDE and M/V THOMAS TIDE, that OTM had bought and planned to transport to Colombia. Diversified worked on the vessels for several months under the supervision of OTM personnel. OTM's principal, Gonzalo Martínez, who is an experienced Master Pilot himself, inspected the vessels on the day they were ready and made final payment to Diversified. Martínez took possession of the vessels, loaded them up, and began the voyage to Colombia. But the vessels did not make it to Colombia by their own power.

The parties agree that the vessels were not completely overhauled, but they disagree as to the extent of the repairs performed. OTM brought suit against Diversified alleging breach of contract, negligent and intentional misrepresentation, negligence, gross negligence, recklessness, breach of warranty of workmanlike performance, and fraud. The fraud claim was subsequently dismissed. Order and Reasons, dated 2/20/13. OTM asserts two alternative theories of liability: either Diversified did not make repairs to the vessels, or the repairs that they made were substandard.

As this case approached trial two years ago, the Court was made aware of allegations of witness tampering by OTM personnel in Colombia. Diversified contended that the owner of OTM had made inappropriate contact with Diversified's expert witness, Captain Francisco Espitia, and had paid him 6,000,000 pesos in an attempt

to get him to change his deposition testimony. This Court referred the matter to the United States Attorney's Office for investigation and administratively closed the case. Recently, the case was reopened after an investigation concluded that there was insufficient evidence of witness tampering, and the matter is once again set for trial.

Diversified seeks to dismiss the plaintiff's claim as sanctions for the alleged witness tampering. The Court heard argument on this motion. Diversified also moves for summary judgment and partial summary judgment as to the gross negligence, recklessness, and punitive damages claims.

As well as opposing Diversified's motions, OTM moves for leave to amend its witness and exhibit list because of its discovery of a lawsuit against Diversified's sister company for allegedly misrepresenting the condition of vessels and engines marketed and sold to their customers, allegations similar to those of OTM here.

**I. Motion to Dismiss as Sanctions for Witness Tampering**

*A.*

It is within the power of a district court to dismiss a suit when a litigant's conduct abuses the judicial process. Pope v. Fed. Exp. Corp., 974 F.2d 982, 984 (8th Cir. 1992); Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). But before the Court imposes a dismissal sanction, the party seeking dismissal must prove by clear and convincing evidence that the conduct was committed in bad

faith and that no lesser sanction would adequately punish and deter the violation. See, e.g., Quiroz v. Superior Bldg. Maint., Inc., No. 06-21594, 2008 WL 3540599 (S.D. Fl. Aug. 12, 2008).

*B.*

If the allegations against OTM personnel regarding Espitia's deposition were proven true, dismissal would likely be merited. On this record, however, the Court does not find clear and convincing evidence that the conduct of OTM personnel was committed in bad faith.

Diversified contends that the following facts are clear: (1) OTM, through its general manager Gonzalo Martínez, reached out to Espitia on its own initiative and agreed to pay him to testify; (2) various high-ranking employees of OTM made at least seven telephone calls to Espitia in the days immediately prior to his deposition; (3) OTM paid Espitia six million pesos in connection with his deposition (about $3,000 at the time); (4) Espitia accepted the money; (5) Espitia believed, based on his conversations with OTM, that OTM expected that he would change his testimony in exchange for the money; and (6) counsel for Diversified was not contemporaneously advised on these communications, invoicing, and payment.[2]

---

[2] The Court finds troubling that counsel for OTM knew the night before the deposition that Espitia had invoiced OTM and yet did not immediately relay this information to counsel for Diversified. This unprofessional conduct, however, does not amount to clear and convincing evidence of witness tampering.

Espitia, a witness located in Colombia and an expert hired by Diversified, was to have his perpetuation deposition testimony taken. When Diversified managed to get in touch with Espitia through an interpreter to inform him of the date and time of the deposition, they learned that he already had that information. Then, at the deposition, counsel for OTM questioned Espitia about a payment he had received from OTM personnel. Espitia testified that he was paid 6,000,000 pesos by OTM personnel because they thought that he could "help" them, and Espitia took the money out of necessity. Nonetheless, Espitia did not alter his testimony from what was contained in his report. Espitia has also indicated that OTM personnel told him to arrive early at the deposition because the lawyers wanted to speak with him beforehand.

These facts, however, do not amount to clear and convincing evidence of witness tampering. First, because Diversified is based in the United States and had lawyers also from the States, coordination with Colombian witnesses was accomplished via OTM. Emails show that Diversified's counsel was aware of this practice. It is thus unremarkable that Espitia already knew about his deposition from OTM before he spoke with an agent of Diversified's counsel. Second, as to the payment Espitia received, although he had already been paid his deposition fee and expenses by Diversified, emails make clear that Espitia demanded money from OTM and threatened not to attend the deposition unless he was paid.

5

OTM requested an invoice from Espitia to the company and then wired the money to him; the payment was not transferred clandestinely. Espitia has stated that he thought that this payment was made because OTM personnel wanted "help" from him, but this statement has never been clarified and is unsupported by objective evidence. Finally, as to the request that he arrive early, when Espitia arrived, OTM's counsel did nothing more than greet him. OTM personnel had been instructed that in general witnesses should arrive early to meet with counsel, and it seems likely that the instruction in this instance was nothing more than a miscommunication. Given the dearth of evidence of witness tampering, the Court finds that sanctions are not warranted.[3]

**II. Motion for Summary Judgment**

*A.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine dispute of

---

[3] If anyone was taken advantage of, it seems Mr. Espitia was interested in getting paid by both sides for one-sided testimony. But this record does not meet the clear and convincing threshold to justify the sanction of dismissal.

fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

7

*B.*

OTM contends either that Diversified did not overhaul its vessels as it claims it did, or that the repairs were substandard.

*i.*

In Colombia, OTM hired Stewart & Stevenson and Lloyd's Register to inspect the failed vessels. At this stage, the Court has before it the perpetuation deposition testimony of OTM's three principal experts: Óscar Guerrero, a Stewart & Stevenson technician; Luis Santamaría, a Stewart & Stevenson consultant; and Francisco Hoyos of Lloyd's Register. The Court also has testimony from a more recent expert for OTM, David Merrion, whose qualifications are being challenged in a separate motion in limine. The experts testify that the vessels were in poor condition when they examined them, but that they were never asked to determine what caused the engines to fail or whether they showed signs of recent overhaul. Guerrero testified that to determine whether the engines were damaged or whether they had been overhauled recently, he would need to disassemble the vessels to examine them more thoroughly. This type of examination was not requested by OTM. Hoyos agreed that his report did not state that the engines were not overhauled because he would need another type of analysis to make that determination. OTM's most recent expert, Merrion, testified that some work was certainly done on the vessels, but that he could not tell how much. Like the other experts, he too

8

requires a more thorough inspection before he can draw that conclusion. OTM's allegation that Diversified performed no work on the engines is unsupported by the sworn testimony of its own experts.

*ii.*

As to whether repairs were performed inadequately, OTM alleges claims for negligence and breach of the implied warranty of workmanlike performance. "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000) (quoting In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5 th Cir. 1991)). "Those who repair a vessel or the equipment aboard it make a warranty, the implied warranty of workmanlike performance." Houston-New Orleans, Inc. v. Page Eng'g Co., 353 F.Supp. 890, 898 (E.D. La. 1972). To succeed for breach of implied warranty, a shipowner must show that the contractor breached the warranty and that this proximately caused the shipowner's injury. Butterfly Transp. Corp. v. Bertucci Indus. Servs. LLC, 351 F. App'x 855, 858 (5th Cir. 2009). In practice, the standard for the warranty of workmanlike performance need not differ from the test for ordinary maritime negligence. Id. at n.10.

OTM has the burden of proof on all of its claims by a preponderance of the evidence. Offshore Specialty Fabricators, LLC v. Dumas Int'l, Inc., 982 F.Supp.2d 695, 700 (E.D. La. 2013). Circumstantial evidence may help the plaintiff meet this burden, but "where only circumstances are relied upon, they must permit a strong inference on the required elements of the plaintiff's claim." Penn Maritime v. Rhodes Elec. Servs., 41 F.Supp.3d 507, 517 (E.D. La. 2014) (citing Offshore Specialty Fabricators, LLC, 982 F.Supp.2d at 700). "[T]he circumstances must exclude other reasonable hypotheses with a fair degree of certainty, showing that the defendant's liability for negligence is more likely than not." Id. The identity of the party in control or possession at the time of the incident is a factor to consider. Offshore Specialty Fabricators, LLC, 982 F.Supp.2d at 700.

On this record, OTM has not shown that any allegedly faulty repairs done by Diversified caused the vessels' failure. In fact, OTM contends that it need not establish causation, stating, without citation to a treatise, rule, or case:

> OTM does not carry that burden [to show causation]. OTM has not pled any cause of action that requires a determination of precisely why the engines failed. OTM does not have to prove precisely why the engines failed because the evidence is sufficient to show either: (1) Diversified did not perform an overhaul at all, or (2) Diversified performed the overhaul so incompetently that the condition of the engines showed no evidence of a recent overhaul.

The plaintiff misstates its burden. OTM has brought claims of

negligence and breach of the implied warranty of workmanlike performance. Such claims require the central element of causation. If Diversified's repairs were negligently done, OTM would be required to demonstrate how those negligent repairs, as opposed to the vessels' other deteriorating parts or operator error, caused the vessels to fail in their journey to Colombia while in OTM's custody and control. OTM has made no effort to do so.

Diversified, on the other hand, has offered evidence of the many other challenges facing the vessels. Although OTM cites the deposition of its principal Gonzalo Martínez–and nothing more–to submit that OTM allowed Diversified to make all of the repairs that it recommended, work tickets show that certain repairs that Diversified recommended were rejected by OTM. Invoices reflect the following repairs by OTM:

1. Out-of-frame overhauls of two of three main engines (center and starboard) of the MARY TIDE;
2. An in-frame overhaul of one of three main engines (center) of the THOMAS TIDE;
3. Service for propulsion drive shafts, journals propellers, and cutlass bearings;
4. Hull painting;
5. Replacement of lifesaving equipment;
6. Air compressor replacement;
7. Installation of A/C compressors with the limited ductwork necessary for the installation;
8. Bilge pump replacement (no bilge piping); and
9. Limited generator servicing and minor electrical repairs.

Relying on the vessels' logs, Diversified contends that several of the parts that it was not permitted to repair or replace began causing problems for the vessels soon after possession was

11

transferred to OTM.  Robert Boudreaux, Sr., testified that OTM loaded the vessels with so much cargo that they were weighed down to such an extent that the exhaust ports were dangerously close to the waterline, even in calm waters.  OTM merely responds by repeating the generic testimony of its expert witnesses that several parts of the vessels looked like they had not been replaced recently.  Many of OTM's attempts to refute the evidence offered by Diversified do not cite evidence in the record.

On this record, where the Court has before it the perpetuation depositions of the major experts and key portions of the testimony of OTM's most recent expert (who relied on the reports of the others), it is apparent that OTM's submissions fail to create any material fact issue.  Quite simply, the tests that needed to be performed to call attention to causation were not.

Accordingly, for the foregoing reasons, IT IS ORDERED that the motion to dismiss as sanctions is DENIED, the motion for summary judgment is GRANTED, and the motions for partial summary judgment and to amend the witness and exhibit list are DENIED AS MOOT.  The case is DISMISSED.

New Orleans, Louisiana, August 31, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE