UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OPERACIONES TECNICAS MARINAS S.A.S.** | **CIVIL ACTION** |
| **VERSUS** | **NO:    12-1979** |
| **DIVERSIFIED MARINE SERVICES, LLC, ET AL.** | **SECTION: "F" (4)** |

### ORDER

Before the Court is a **Motion for Leave to File Fourth Amended Complaint to Plead Alternative Jurisdiction (R. Doc. 147)** filed by the Plaintiff, Operaciones Tecnicas Marinas S.A.S. ("OTM"), seeking to identify diversity jurisdiction as an alternative basis for jurisdiction and to request a jury trial. The motion is opposed. R. Doc. 149; R. Doc. 150. The motion was submitted on November 15, 2016. For the following reasons, the motion is **DENIED**.

### I.     Background

OTM initiated this action on July 31, 2012 alleging claims for breach of contract; negligent misrepresentation; intentional misrepresentation; negligence, gross negligence, and recklessness; breach of warranty of workmanlike performance; and fraud. This case arises out of a failed maritime voyage from Houma, Louisiana to Cartagena, Colombia. OTM is a marine operating company based in Cartagena, Colombia that purchased two sister vessels, M/V MARY TIDE and M/V THOMAS TIDE, which had been out of service for several years. In November 2010, OTM entered into a contract with defendant, Diversified Marine Services, LLC ("Diversified"), to dry-dock the vessels, evaluate their condition, and determine the work necessary to make the vessels seaworthy.

Between November 2010 to June 2011, Diversified allegedly commenced work on the vessels and OTM approved a schedule of work that Diversified supposedly performed and told

1

OTM it had performed. On May 17, 2011, based on Diversified's assurances that the vessels were nearly ready for use, OTM entered into a bareboat charter agreement with Serviport S.A. that was scheduled to commence on July 15, 2011. OTM contends that it informed Diversified of the charter agreement and Diversified told OTM that the vessels would be fit for the voyage to Colombia in sufficient time to commence the charter.

OTM paid Diversified a total of $344,769.15 in repairs[1] purportedly performed to both vessels and on June 23, 2011, both vessels departed the Diversified shipyard for Cartagena, Colombia. During the voyage, the vessels experienced severe mechanical and electrical problems and had to be towed the last leg of the voyage. Upon inspection of the engines, OTM learned that the center main engine of M/V THOMAS TIDE and the starboard main engine of M/V MARY TIDE had not been overhauled as Diversified agreed. Due to the condition of the vessels, OTM was allegedly in breach of the OTM-Serviport bareboat charter agreement because the vessels were unavailable for delivery to Serviport on July 15, 2011.

On December 19, 2012, the Court dismissed OTM's fraud claim for failure to allege fraudulent intent and granted OTM leave to amend its pleading as to its fraud claim. *See* R. Doc. 14. OTM filed its second amended complaint on January 10, 2013. On February 20, 2013, the Court, once again, dismissed OTM's fraud claim on the grounds that it failed to plead factual allegations that invite an inference of fraudulent intent. *See* R. Doc. 29.

---

[1] The repairs allegedly made include: (1) the main engines of both vessels were inspected; (2) the center and starboard main engines of the M/V MARY TIDE had undergone full out-of-frame overhauls; (3) the center main engine of the M/V THOMAS TIDE had undergone an in-frame overhaul; (4) the gears transmitting the power between the main engine to the shaft of both vessels were inspected and repaired; (5) the rudder stocks and steering systems of both vessels were inspected and repaired; (6) the hull integrity of both vessels were inspected for water leakage and possible compromised areas, and repair for laying the same had been recommended and performed; (7) the necessary navigational equipment on both vessels were inspected, tested, and repaired or replaced accordingly; (8) the air-conditioning systems, along with other various systems, were inspected and repaired as new.

On August 12, 2013, the Court issued a stay of the proceedings due to an allegation that one of the parties was engaged in witness tampering. *See* R. Doc. 38. On February 4, 2014, the Court granted OTM's motion to lift the stay on the proceedings due to the conclusion of the investigation into witness tampering. *See* R. Doc. 45.

On July 13, 2015, the Court denied in part and granted in part OTM's request to file a third amended complaint. R. Doc. 62. The Court denied OTM's request to add Robert Boudreaux as a defendant and to re-allege fraud; but, the Court granted the Plaintiff's request to add St. Paul Fire and Marine Insurance Company ("St. Paul") as a defendant.

On August 31, 2015, the Court granted Diversified's motion for summary judgment (R. Doc. 120), and judgment was subsequently entered for Diversified. R. Doc. 121. OTM subsequently appealed that judgment. R. Doc. 129. The Fifth Circuit reversed the District Court and remanded the case for trial pursuant to its order. *See* R. Doc. 139.

On September 23, 2016, the District Court issued a revised scheduling order. R. Doc. 141. In particular, the Court set stated that amendments to pleading should be filed no later than thirty days from the scheduling order, or October 24, 2016. *Id.*

At this time, OTM has filed a motion to file a fourth amended complaint. R. Doc. 147. In particular, OTM seeks to amend its complaint to allege diversity jurisdiction as an alternative basis for jurisdiction of its common law claims and to assert its right to trial by jury. R. Doc. 147-2. Both Diversified (R. Doc. 150) and St. Paul (R. Doc. 149) oppose the motion.

## II.   **Standard of Review**

Generally, Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule

3

"reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir.2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ...and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir 2003)).

### III.   Analysis

Here, OTM seeks leave to file a fourth amended complaint in order to assert diversity jurisdiction, thereby potentially allowing OTM to demand a jury trial. R. Doc. 147. OTM filed the motion for leave to file on October 21, 2016. *Id.* Because the motion as filed before October 24, 2016, the deadline set out by the Court, OTM's motion is evaluated under the standard established by Rule 15(a).

#### A.   Undue Delay, Bad Faith, or Dilatory Motive

Diversified argues that the amendment should be denied because OTM has unduly delayed filing the amendment seeking to add diversity jurisdiction. R. Doc. 150, p. 9. Diversified states that OTM has known of the diversity jurisdiction since its initially filed in August of 2012 and has only now decided to assert diversity jurisdiction in an attempt to demand a jury trial as part of a

strategic litigation decision. *Id.* at p. 10. While OTM does not address the Rule 15(a) factors, OTM appears to argue that its motion is timely filed within the Court's scheduling order and is therefore not unduly delayed. R. Doc. 147-1, p. 4.

Delay alone does not justify denial of a motion to amend. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Rather, denial of a motion under Rule 15(a) is appropriate where the delay is "undue" in that it prejudices the nonmoving party or places an unfair burden on the Court. *Mayeaux*, 376 F.3d at 427 (citing *Dussouy v. Gulf coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)); *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) (internal ciations and quotations omitted) ("The touchstone for denial of leave to amend under Rule 15(a) is prejudice. Thus, delay warrants dismissal only if the delay ... presents the possibility of serious prejudice to the opponent."). Delay is prejudicial if "it hinders the opposing party's ability to respond to the proposed amendment or to prepare for trial" such as "if the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial." *Dueling*, 623 F. App'x at 130.

Here, while OTM's amendment comes nearly four years after its original complaint, there is no indication that the amendment would seriously prejudice the defendants. First, the Court has in the past found that allowed amendments following an appeals process—even years after the filing of the initial complaint—when done within the period allotted by the Court's Scheduling Order. *See RSUI Indem. Co. v. Am. States Ins. Co.*, No. 12–2820, 2015 WL 1525854, at *3-4 (E.D. La. Apr. 2, 2015); *Crosby v. Blue Cross Blue Shield of Louisiana,* No. 08–0693, 2011 WL 6817814, at *4 (E.D.La. Dec. 28, 2011). "Given the procedural history of this case and [the] fact that Plaintiff satisfied the deadline set forth in the Court's Scheduling Order, it cannot be said that Plaintiff's motion was a product of bad faith, dilatory motive or undue delay." *Crosby,* 2011 WL

6817814, at *4 (citing *Mendoza v. City of New Orleans,* No. 06–3040, 2007 WL 1239123 (E.D.La. Apr. 26, 2007)).

Moreover, the potential prejudice cited by Diversified is the costs that would be incurred to prepare to try this case before a jury. R. Doc. 150, p. 10. However, the Court's Scheduling Order set trial for May 15, 2017 and has reopened discovery. R. Doc. 141. While Diversified argues that it will need to reconduct some discovery to prepare material for a jury trial rather than a bench trial, the amendment to assert diversity jurisdiction to allow for a jury demand does not "hinder[] [the defendants'] ability to respond to the proposed amendment or to prepare for trial." Nor does the amendment "fundamentally alter the nature of the case" so as to prejudice the defendants. *See Mayeaux*, 376 F.3d at 427 (denying amendment that would "reconstruct[ ] the case anew" and plead a "fundamentally different case with new causes of action and different parties."). As such, the Court does not find that the amendment should be denied for undue delay, bad faith motive, or dilatory motive.

### B.  Repeated Failures to Cure Deficiencies by Amendments Previously Allowed

Diversified also argues that the motion should be denied because OTM has failed to assert diversity jurisdiction in its three previous amendments to the complaint. R. Doc. 150, p. 9. Diversified avers that OTM's failure was a cognizant choice and should not be allowed at this time.

"When considering whether there have been repeated failures to cure deficiencies by amendments previously allowed, courts in this circuit have considered how many previous amendments were attempted by the mover." *Operaciones Tecnicas Marianas*, 2015 WL 4254130, at *4 (citing *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir.2008)). The Fifth Circuit has found that more than two previous amendments amount to a repeated failure to cure such that denial of the amendment is not improper. *Herrmann Holdings Ltd. v. Lucent Technologies Inc.,*

6

302 F.3d 552, 566 (5th Cir.2002) (finding repeated failure where plaintiff had already filed an original complaint and two amended complaints).

Nonetheless, while courts look to the number of complaints filed, courts also consider the nature of previous amendments to determine if the movant had had opportunities to correct any *deficiencies* and failed to do so. *See Id.* at 566 (explaining repeated failure to correct deficiency in claims); *see also, Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607-08 (5th Cir. 1998) (finding no abuse in district court's decision to deny motion to amend where plaintiff had three opportunities to sufficiently articulate damages theory and failed to do so). Moreover, as in considering all factors, the Court is guided by liberality espoused by Rule 15(a).

Here, OTM has not repeatedly failed to cure any deficiency in the pleadings. Rather, OTM has for the first time decided that "given the long and complex motion practice that preceded the appeal, the plaintiff [now] is simply looking to have its rights at trial determined by a jury as the trier of fact." R. Doc. 147-1, p. 1. Guided by Rule 15(a)'s liberal standard and the fact that OTM has not repeatedly failed to cure a deficiency but has instead attempted to adopt a new litigation strategy of pursuing a jury trial, the Court does not find that OTM's motion to amend should be denied for repeated failures to cure deficiencies by amendments previously allowed.

### C.     Futility

Diversified and St. Paul both argue that OTM's motion to amend should be denied as futile. They argue that under Fifth Circuit law OTM's 9(h) designation precludes the right to a jury trial even if OTM is allowed to amend its complaint to alternatively state diversity jurisdiction. R. Doc. 150, p. 6-7 (citing *T.N.T. Marine Service, Inc. v. Weave Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587 (5th Cir. 1983); R. Doc. 149, 4-5 (same). They also argue that OTM's reliance on *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050 (9th Cir. 1997) and *Luera v. M/V Alberta*, 635 F.3d 181 (5th Cir. 2011) is misplaced as both cases are factually and procedurally distinguishable from the

present case. In turn, the Plaintiff argues that *Ghotra* and *Luera* demonstrate that a jury trial may be demanded in cases involving admiralty claims and non-admiralty claims based on some other non-admiralty jurisdiction.

"When a plaintiff's claim is cognizable under admiralty jurisdiction and some other basis of federal jurisdiction, the Federal Rules of Civil Procedure allow the plaintiff to expressly designate her claim as being in admiralty." *Luera*, 635 F.3d at 188. *See also,* Fed. R. Civ. P. 9(h).[2] This designation carries with it "numerous and important consequences," particularly in regards to the right to try one's case before a jury. *T.N.T. Marine*, 702 F.2d at 586. As the Fifth Circuit explained in *Luera*:

> One of the most important consequences relates to the rules of procedure that will be applied to the case. If a claim is pleaded under diversity jurisdiction, the rules of civil procedure will apply, and the parties will be guaranteed, under the Seventh Amendment, a right to have the claim tried by a jury. If the claim is pleaded under admiralty jurisdiction, however, the plaintiff will invoke those historical procedures traditionally attached to actions in admiralty. . .[including] the historical procedures unique to admiralty is that a suit in admiralty does not carry with it the right to a jury trial. Thus, there is no right to a jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though diversity jurisdiction exists as well.

635 F.3d at 188 (internal quotations and citations omitted). Even "the mere assertion of admiralty jurisdiction as a dual or alternate basis of subject matter jurisdiction for a claim is sufficient to make a Rule 9(h) election." *Id.* at 188-89. As a result, the Fifth Circuit has found that the plaintiff made a 9(h) election where a complaint alleged both "diversity and admiralty jurisdiction as alternate bases for the court's jurisdiction without specifying whether the plaintiff asserted a separate jurisdictional basis for each claim." *Id.* at 189 (citing *T.N.T. Marine*, 702 F.2d at 587-88).

---

[2] Federal Rule of Civil Procedure 9(h)(1) provides: "If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated."

Nonetheless, in *Luera*, the Fifth Circuit clarified that the mere presence of admiralty claims does not amount to a 9(h) election. *Id.* at 190 ("[B]y its plain language, Rule 9(h) applies to "claims" and not to entire cases.")  Therefore, where a plaintiff clearly expresses an intent to have certain claims premised on the district courts diversity jurisdiction rather than its admiralty jurisdiction no 9(h) election has been made. *Id.* Ultimately then, in a case containing both admiralty claims and non-admiralty claims where no 9(h) designation has been made, "'the non-jury component of admiralty jurisdiction must give way to the [S]eventh [A]mendment'" *Id.* at 196 (quoting *Ghotra*, 113 F.3d at 1057).

Moreover, the Court notes that "'9(h) is not a harsh rule'" *Conti v. Sanko S.S. Co., Ltd.*, 912 F.2d 816, 817-18 (5th Cir. 1990) (quoting *T.N.T. Marine*, 702 F.2d at 588). The Fifth Circuit has recognized that a plaintiff may amend his complaint to remove the 9(h) election. *See Luera*, 635 F.3d at 187 ("Provided that there is no prejudice to the court or to the defendants, a plaintiff should be permitted to amend her complaint to change her 9(h) election."); *see also*, *Conti*, 912 F.2d at 818.

Here, OTM has attempted to amend its complaint to remove the 9(h) election and assert diversity jurisdiction for its common law claims, including multiple state law claims. R. Doc. 147-1. And, as discussed *supra*, the Court does not believe that any prejudice would arise should OTM remove the 9(h) designation and assert a jury demand based on its non-admiralty claims. As such, the essence of OTM's motion to amend is not only not futile, but also a proper course of action. *See Luera*, 635 F.3d at 187.

However, like many a golf swing, the problem with OTM's attempted amendment comes in the follow through. OTM's proposed amended complaints reads:

> Plaintiff OTM is a corporation duly organized and existing under the laws of Colombia. Defendant Diversified is a company organized under the laws of the State of Louisiana with its principal place of business in Louisiana. Defendant St.

9

> Paul is a foreign insurance company, organized and existing under the laws of a state other than the State of Louisiana.
>   Accordingly, and alternatively, pursuant to 28 U.S.C. Section 1332(a)(2), the amount in controversy exceeds $75,000. The common law claims, including multiple state causes of action at all times material, are between citizens or subjects of a foreign state and citizens of a state such that diversity jurisdiction exists.

R. Doc. 147-2, p. 2. Because OTM has listed diversity as merely an alternative basis of jurisdiction, OTM has not done enough to remove the 9(h) designation to therefore be able to assert a demand for a jury. *See Leura,* 635 F.3d at 189. As such, OTM's proposed amendment is technically futile in this regard. Had OTM clarified the distinct bases for jurisdiction for each of its claims, OTM's proposed amended complaint would likely not be futile. For this reason, the Court must deny OTM's motion to amend at this time.[3]

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Leave to File Fourth Amended Complaint to Plead Alternative Jurisdiction (R. Doc. 147)** is **DENIED**.

New Orleans, Louisiana, this 21st day of November 2016.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[3] While the Court does not reach Diversified's argument that OTM's jury demand would be untimely and thus futile under Rule 38, the Court opines that it would not be persuaded by this argument. Even if OTM's jury demand is untimely under Rule 38, the district court may still grant an untimely jury demand request under Federal Rule of Civil Procedure 39 in the absence of strong and compelling reasons to the contrary. *See, e.g., Swofford v. B & W, Inc.*, 336 F.2d 406, 409 (5th Cir. 1964) ("The right to a jury in a federal court as declared by the Seventh Amendment is a basic and fundamental feature of our system. And when the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary.").